SPRING WATER DAIRY, INC., Peter Henstra, Lois Henstra, husband and wife, Plaintiffs,

v.

FEDERAL INTERMEDIATE CREDIT BANK OF ST. PAUL, Production Credit Association of Worthington, Defendants.

Civ. No. 4–84–1336.

United States District Court, D. Minnesota, Fourth Division.

Jan. 3, 1986.

---

Kurt M. Anderson, Balyk & Associates, St. Paul, Minn., for plaintiffs Peter and Lois Henstra.

Robert M. Halvorson, Gary W. Koch, Gislason, Dosland, Hunter & Malecki, New Ulm, Minn., for defendants FICB and PCA.

Sandra M. Schraibman, Merril Hirsh, Attys., Dept. of Justice, Civ. Div., Washington, D.C., and Gary L. Norton, Senior Atty., Farm Credit Admin., McLean, Va., of counsel, for defendant Wilkinson.

Hubert H. Humphrey, III, Atty. Gen., Jean Boler, Sp. Asst. Atty. Gen., St. Paul, Minn., amicus curiae.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter is before the Court on the motion of each defendant to dismiss and the motion of plaintiffs Peter and Lois Henstra for a temporary restraining order or preliminary injunction. The Court will grant the motions to dismiss and will deny plaintiffs' request for injunctive relief.

### FACTS

Plaintiff Spring Water Dairy, Inc. (Dairy) is a corporate family farming operation. Plaintiffs Peter and Lois Henstra are the sole shareholders of that corporation. Since 1967, plaintiffs have largely financed their farming operation through loans from one of the defendants in this action, the Production Credit Association of Worthing-

ton (PCA).[1] PCA's loans to plaintiffs were a series of one-year notes secured by property belonging to the individual plaintiffs and the corporate plaintiff. The individual plaintiffs also personally guaranteed the notes.

When it came time for renewal of the PCA loans in 1983, the PCA substantially devalued plaintiffs' assets which served as collateral. PCA demanded a large amount of additional collateral in the form of second real estate mortgages. Plaintiffs did not accede to the PCA's demands, thus the PCA did not provide plaintiffs with new credit for plaintiffs' 1983 operating expenses.

By February 1, 1984, plaintiffs owed the PCA approximately $387,000. PCA offered to subordinate its liens on plaintiffs' assets to allow plaintiffs to obtain financing elsewhere, on two conditions: plaintiffs would have to provide additional collateral, and plaintiffs would have to pay the interest which accrued during 1984 plus $30,000 of the principal. Plaintiffs contend that these conditions would have resulted in foreclosure of their real estate mortgages, and thus plaintiffs refused the PCA's offer. Subsequently, the PCA commenced a replevin action against plaintiffs in state court. The Dairy then filed a petition in bankruptcy under chapter 11.

Plaintiffs commenced the present action on December 17, 1984. In addition to the PCA, plaintiffs have named as defendants the Federal Intermediate Credit Bank of St. Paul (FICB) and Donald Wilkinson in his official capacity as Governor of the Farm Credit Administration (FCA).[2]

The FCA is an independent executive agency comprised of the FCA Board, the Governor, and other personnel. 12 U.S.C. § 2241. The FCA is mandated to charter, supervise, examine, and regulate the banks and associations that comprise the Farm Credit System (System). The System is divided into twelve Farm Cred-

it Districts, each of which contains a federal land bank, a federal intermediate credit bank, a bank for cooperatives, and varying numbers of local federal land bank associations, local banks for cooperatives, and PCAs.... Those PCAs obtain funds from the FICB to finance operating and capital credit needs of eligible borrowers. The System banks and associations are owned by borrower-members and operated on a cooperative basis. Their function is to serve the credit needs of farmers, ranchers, and aquatic producers and harvesters.

*Harper v. Farm Credit Administration,* CIVIL 85–291–PA, slip op. at 5 (D.Ore. June 3, 1985).

Plaintiffs allege that the PCA and FICB violated various federal laws and regulations as well as state laws. A major allegation of plaintiffs is that these two defendants contravened a regulation which provides that the loan servicing policy of these lenders

shall provide a means of forbearance for cases when the borrower is cooperative, making an honest effort to meet the conditions of the loan contract, and is capable of working out of the debt burden.

12 C.F.R. § 614.4510(d)(1) (hereafter "loan servicing regulation").

Plaintiffs allege that defendant Wilkinson, as governor of the FCA, has failed to direct PCA and FICB to comply with various regulations, including the loan servicing regulation. Plaintiffs further allege that Wilkinson implemented practices and procedures, as well as issued instructions, which induced the FICB and PCA to devalue plaintiffs' collateral.

## DISCUSSION

Plaintiffs assert two bases for federal jurisdiction in this action, federal question jurisdiction, 28 U.S.C. § 1331, and the mandamus statute, 28 U.S.C. § 1361. Plaintiffs have five causes of action, three of

---

1. The PCA is a nonprofit entity organized under Subchapter II, Part B of the Farm Credit Act, 12 U.S.C. §§ 2091–98.

2. Plaintiffs had originally named three PCA loan officers as defendants, but in an order dated June 10, 1985, Chief Judge Lord dismissed those three defendants.

which, Counts I, IV and V, are based on federal regulations and/or statutes. Counts II and III are state law claims founded on implied contract and misrepresentations and negligence.

### 1. Private Cause of Action under Farm Credit Act

In order for plaintiffs' federal causes of action to state a claim upon which relief can be granted, the Farm Credit Act (hereafter Act), 12 U.S.C. §§ 2001–2260, must allow for a private cause of action. The Act does not explicitly provide for a private cause of action, but in certain circumstances it is nevertheless appropriate to imply a private cause of action. *See, e.g., Cannon v. University of Chicago*, 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979). Two federal district courts have dealt with the issue of whether a private cause of action should be implied under the Act and both have concluded that a private cause of action should not be implied. *Bowling v. Block*, 602 F.Supp. 667, 670–71 (S.D.Ohio 1985), *appeal pending*, No. 85–3204 (6th Cir.); *Hartman v. Farmers Production Credit Association of Scottsburg*, No. 81–163–C, slip op. (S.D.Ind. Mar. 18, 1983). The Eleventh Circuit has just recently reached this same conclusion. *Smith v. Russellville Production Credit Association*, 777 F.2d 1544, 1546–47 (11th Cir.1985).

The United States Supreme Court has enunciated a four-part test to determine whether a private cause of action should be implied for violations of a federal statute:

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted,"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an·area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, ·2088, 45 L.Ed.2d 26 (1975) (citations omitted); *see also Shidler v. All American Life & Financial Corp.*, 775 F.2d 917, 921–24 (8th Cir.1985) (applying *Cort* factors to imply a private cause of action under an Iowa statute). The United States Court of Appeals for the Eighth Circuit has observed that "[i]n more recent cases the Supreme Court has looked almost exclusively to congressional intent—the *Cort v. Ash* criteria being treated as indicia of that intent.... Since deciding *Cort v. Ash* the Court has become increasingly more reluctant to imply new private causes of action for damages." *Hofbauer v. Northwestern National Bank of Rochester*, 700 F.2d 1197, 1200 (8th Cir.1983) (citations omitted).

### A. Act for the Special Benefit of Farmers

The first *Cort* criterion is that Congress passed the Act for the special benefit of a class in which plaintiffs are members. Merely because plaintiffs are benefited by the Act does not mean that plaintiffs have satisfied this first prong, rather, plaintiffs must show they are "members of a 'special class' for whose benefit the statute was enacted." *Hofbauer*, 700 F.2d at 1200, *citing Cannon*, 441 U.S. at 689, 99 S.Ct. at 1953.

The Farm Credit System established by the Act seeks "to satisfy the peculiar credit needs of American farmers and ranchers while encouraging those farmers and ranchers to participate through management, control, and ownership of the system." *Daley v. Farm Credit Administration*, 454 F.Supp. 953, 954 (D.Minn.1978). *See also* 12 U.S.C. § 2001(a) (declaration of policy and objectives of the Act). Based on the objectives of the Act, plaintiffs[3] con-

---

**3.** A number of arguments supporting plaintiffs' view were actually raised by the State of Min-   nesota in its amicus curiae brief. However, the

clude that it is beyond serious doubt that Congress passed the Act for the special benefit of farmers who need credit. Plaintiffs contend that even the district courts which have held that no private cause of action exists concede that the Act was created for the benefit of farmer-borrowers. This statement, however, is somewhat deceiving. The *Hartman* court stated that it was arguable that farmers constituted a special class of beneficiaries, *Hartman*, slip op. at 6, and the court gave the plaintiffs the benefit of the doubt on this point because the other elements of the *Cort* test led to the conclusion that no private cause of action existed.

Defendant Wilkinson argues that while farmers do benefit from the Act, the Act is not especially designed to aid farm borrowers who are unable to repay their debts. Thus, defendant Wilkinson conceptualizes plaintiffs as members of a class more narrow than simply farmers seeking credit; he perceives the class as farmers who are unable to repay their debts. Both definitions of the class of which plaintiffs are members seem plausible. Defendant Wilkinson, however, offers Eighth Circuit support for his view.

■ In *Wilson v. Mason State Bank*, 738 F.2d 343 (8th Cir.1984) the court held that the Emergency Agricultural Credit Adjustment Act, 7 U.S.C. following § 1947, did not create an implied cause of action. The court acknowledged that the underlying purpose of the law might have been to make credit available to farmers, and that the law did impose requirements on lenders' conduct towards borrowers. *Wilson*, 738 F.2d at 345. Nevertheless, the court determined that the law's purpose was to protect the Secretary of Agriculture's position as a guarantor of loans. *Wilson*, 738 F.2d at 345. The Secretary's stability as a loan guarantor would ultimately benefit farmers, but the court concluded that the law did not allow a private cause of action for what was essentially a debtor-lender dispute. *See Wilson*, 738 F.2d at 345. Thus, simply because a law seeks to aid

farmers by providing credit to them, the law does not necessarily create specific rights for farmers.

Unlike the statute involved in *Allison v. Block*, 723 F.2d 631 (8th Cir.1983), the Farm Credit Act does not contain specific rights which support plaintiffs' cause of action. In *Allison*, the Eighth Circuit concluded that an implied cause of action existed under 7 U.S.C. § 1981a, a provision of the Consolidated Farm and Rural Development Act. The portion of the statute involved allowed the Farmers Home Administration to forego foreclosing on loans if farmer-borrowers made certain showings. Relying upon the law's express provisions and legislative history, the Court concluded that a farmer could bring suit to require the Secretary of Agriculture to establish regulations to effectuate the purpose of the law. *See Allison*, 723 F.2d 633–36. The Court ordered the Secretary to establish regulations to implement the procedures envisioned by the statute. *Allison*, 723 F.2d at 638. The Eighth Circuit, however, has distinguished *Allison* and refused to imply a private cause of action where a statute does not create specific rights as did the provision in *Allison*. *See Wilson*, 738 F.2d at 345; *cf. State of Iowa ex rel. Miller v. Block*, 771 F.2d 347, 351–52 (8th Cir.1985) (drawing upon *Allison* to allow a private cause of action to compel creation of administrative procedures where, like *Allison*, statute and legislative history definitely anticipated the creation of administrative procedures).

■ In the present case, the Farm Credit Act does not contain provisions granting plaintiffs specific rights upon which to base their claims. The only statutory provisions which plaintiffs can point to as creating a specific right for farmers are 12 U.S.C. § 2201–02. These sections do provide that unsuccessful applicants for credit are entitled to reasons for the denial and an informal hearing to question the denial. These provisions do give loan applicants specific rights, but plaintiffs here are not loan ap-

Court will simply refer to such arguments as "plaintiffs."

plicants. Plaintiffs also argue that the loan servicing regulation, 12 C.F.R. § 614.-4510, itself creates a specific right or duty for the benefit of plaintiffs, but the Eleventh Circuit has rejected this argument. *Smith,* 777 F.2d at 1546–47; *but cf. DeLaigle v. Federal Land Bank of Columbia,* 568 F.Supp. 1432, 1436 (S.D.Ga.1983). Even if plaintiffs' interpretation of the regulation was correct, a regulation cannot provide the basis for an implied cause of action when the statute does not. *Touche Ross & Co. v. Redington,* 442 U.S. 560, 577 n. 18, 99 S.Ct. 2479, 2489 n. 18, 61 L.Ed.2d 82 (1979); *see also Cannon,* 441 U.S. at 690 n. 13, 99 S.Ct. at 1954 n. 13 (look to *statutory* language creating rights or duties). Furthermore, the courts which have directly faced the issue of whether the Farm Credit Act supports a private cause of action have held that the Act merely establishes a system for providing additional credit to farmers, and does not confer specific enforceable rights on behalf of farmers. *Smith,* 777 F.2d at 1546–47; *Bowling,* 602 F.Supp. at 670–71, *citing Hartman,* slip op. at 10.

■ Whether or not the statute in question has language creating specific rights for plaintiffs or duties owed to plaintiffs is generally the most important indicator of the propriety of implying a private cause of action. *See Cannon,* 441 U.S. at 690 n. 13, 99 S.Ct. at 1954 n. 13. Here, the Act does not contain specific rights which benefit the plaintiffs in this action. The Court, therefore, concludes that plaintiffs have failed the first prong of the *Cort* test because farmers having difficulty paying debts are not a "special class" for whose benefit the Act was passed. Even if plaintiffs cleared this first hurdle, they would not necessarily be entitled to assert a private cause of action. *See Universities Research Ass'n Inc. v. Coutu,* 450 U.S. 754, 771, 101 S.Ct. 1451, 1461, 67 L.Ed.2d 662 (1981) (fact that law designed to benefit a particular class does not necessarily mean that Congress intended a private remedy).

**B. Legislative Intent**

■ The second prong of the *Cort* test is whether there is "any indication of legislative intent, explicit or implicit, either to create" a private cause of action "or to deny one." *Cort,* 422 U.S. at 78, 95 S.Ct. at 2088. The issue of legislative intent is central, and all of the other *Cort* factors really speak to this issue. *See Hofbauer,* 700 F.2d at 1200. For instance, the previous discussion regarding whether the Act established specific rights and duties vis-a-vis farmers is very relevant to the issue of whether Congress intended to establish a private cause of action. The fact that Congress did not establish specific rights and duties indicates that a private cause of action was not intended.

Another method for attempting to discern Congressional intent is the legislative history of a law. Here, the legislative history contains no express indications whether Congress did or did not intend to create a private cause of action, or that Congress even considered the issue. *Smith,* 777 F.2d at 1547; *Hartman,* slip op. at 7. Plaintiffs do point to some pieces of legislative history which speak of the importance of providing farmers a stable source of credit during good and bad times. These statements, however, are entirely consistent with the conclusion that the Act simply established a system to provide credit to farmers, and did not create specific rights and duties on behalf of farmers. These statements do not offer explicit support for a private cause of action as did the legislative history in *Allison. See Allison,* 723 F.2d at 634–36.[4] In sum, the Court concludes that the plaintiffs have also failed this prong of the *Cort* test.

**C. Remaining Prongs**

■ The third prong of the *Cort* test is whether creating a private right of action

---

**4.** In *Allison,* the Eighth Circuit was able to point to a number of remarks in the statute's legislative history, including portions of a conference committee report, which explicitly envisioned the Secretary promulgating regulations under the statute. This legislative history was important to the court's conclusion that a farmer could bring suit to require the Secretary to promulgate the regulations called for by the statute. *Allison,* 723 F.2d at 634–35.

would be consistent with the purposes of the Act. The fourth aspect of the test is whether the plaintiffs' cause of action is traditionally one relegated to state law. *Cort,* 422 U.S. at 78, 95 S.Ct. at 2087. These two prongs of the test can be dealt with simultaneously because the major point to be made regarding both is quite similar.

Failing to imply a private cause of action should not frustrate the Act's purpose of providing credit to farmers, because plaintiffs can still protect their rights as debtors under state law. *Hartman,* slip op. at 10, *citing Boyster v. Roden,* 628 F.2d 1121, 1125 (8th Cir.1980). In *Boyster,* the plaintiffs were alleging that a member of the board of directors of a local production credit association had breached a fiduciary duty owed to them. The plaintiffs asserted that federal common law, and not state law, should govern the fiduciary duties of PCA officers and directors. The court acknowledged the substantial federal interest in having PCAs provide credit to farmers, but the court held that state law should govern the fiduciary relationship. *Boyster,* 628 F.2d at 1125. The court reasoned that

> [e]ven if the fiduciary law varies somewhat from state to state, no burden to the System is perceived; each production credit association is a separate entity with a local situs, and its business transactions are with farmers and ranchers in its locale. [Plaintiffs] have failed to specifically show any significant conflict between some federal policy or interest and the use of state law, nor have they shown that state law is inadequate to protect their rights. There is no reason to override state law in this suit between private litigants.

*Boyster,* 628 F.2d at 1125 (footnote omitted).

*Boyster* also indicates that the claims of the plaintiffs in the present action are claims traditionally relegated to state law. In addition to violations of federal law and regulations, plaintiffs are asserting causes of action based on breach of an implied contract, misrepresentation, and negligence. As the Eighth Circuit observed in a similar context, this case essentially is a dispute between local farmers and their local lender, and such actions are "traditionally within the domain of state law." *Wilson,* 738 F.2d 345. Accordingly, plaintiffs have failed to satisfy the third and fourth aspects of *Cort.*

### D. Type of Dismissal

▇ The Court concludes that plaintiffs cannot assert a private cause of action under the Farm Credit Act or its regulations. Thus, the Court will dismiss plaintiffs claims based on violations of the Act and its regulations, Counts I, IV and V, for failure to state a claim upon which relief can be granted. Dismissal on this basis is more appropriate than dismissal for lack of subject matter jurisdiction. Dismissal based on lack of subject matter jurisdiction is appropriate only if the federal claims are insubstantial. Claims are "insubstantial only if . . . prior decisions inescapably render the claims frivolous. . . ." *Goosby v. Osser,* 409 U.S. 512, 518, 93 S.Ct. 854, 859, 35 L.Ed.2d 36 (1973); *Koke v. Stifel, Nicolaus & Co.,* 620 F.2d 1340, 1346 (8th Cir. 1980). Here, the Court agrees with the three courts which have declined to imply a private cause of action under the Act. These decisions, however, obviously are not controlling precedent, and the Eleventh Circuit announced its decision subsequent to the briefing and arguments on the present motions. The Court therefore, cannot conclude that plaintiffs' federal claims were frivolous and thus dismissal will not be based on lack of subject matter jurisdiction.

### 2. Mandamus

▇ Plaintiffs have also claimed as a basis for jurisdiction the mandamus provision, which provides that federal district courts have original jurisdiction to compel an officer or employee of the United States or any agency to perform a duty owed to the plaintiff. 28 U.S.C. § 1361. Plaintiffs are asserting a mandamus action in which they seek to require defendant Wilkinson, in his official capacity as Governor of the

FCA, to issue regulations to implement the policy embodied in the loan servicing regulation.[5] The loan servicing regulation provides that the boards of directors of local FICBs shall direct their FICBs and PCAs to adopt loan servicing policies, 12 C.F.R. § 614.4510, and that the policies are to provide a means of forbearance for borrowers under certain circumstances 12 C.F.R. § 614.4510(d)(1).

■ Defendant Wilkinson argues that even if plaintiffs had a private cause of action under the Act, he would still be entitled to dismissal. Defendant Wilkinson reasons the Farm Credit System is a decentralized system in which local lenders make their own lending decisions, and therefore he could not be responsible for the decisions of the Worthington PCA and the St. Paul FICB. The Court, however, need not reach this argument since the lack of a private cause of action under the Act precludes plaintiffs from obtaining mandamus relief.

**3. Preliminary Injunction**

■ In addition to opposing defendants' motions to dismiss, plaintiffs sought either a temporary restraining order or a preliminary injunction. Since all parties were present at the oral argument and since they had received ample notice, the Court treated plaintiffs' request as one for a preliminary injunction. *See* Fed.R.Civ.P. 65(a)(1) and 6(d). The Court indicated from the bench that it would not issue a preliminary injunction.

Plaintiffs are seeking injunctive relief in order to stop the PCA's efforts to liquidate the corporate plaintiff, the Dairy, which is currently in chapter 11 bankruptcy. The PCA is attempting to liquidate the Dairy, and the bankruptcy court had scheduled a hearing on the proposed liquidation plan for a time shortly after the Court's hearing on plaintiffs' preliminary injunction motion. Plaintiffs state that "[t]hese proceedings [we]re preliminary to possible confirmation of the PCA liquidation plan." Thus, plaintiffs wished to enjoin the PCA from proceeding with its efforts to liquidate plaintiff corporation.[6]

The test for whether preliminary injunctive relief should issue is set forth in *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109 (8th Cir.1981) (en banc). Four factors are to be considered:

(1) the threat of irreparable harm to the movant;

(2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant;

(3) the probability that movant will succeed on the merits; and

(4) the public interest.

*Dataphase*, 640 F.2d at 114. No doubt, the harm to plaintiffs from the Dairy being liquidated is drastic, but plaintiffs must fail the *Dataphase* test because plaintiffs cannot succeed on the merits.

**4. Remaining State Claims**

■ The Court has concluded that plaintiffs' federal causes of action in Counts I, IV and V fail to state a claim upon which relief can be granted. Neither the Court nor the parties, however, have addressed the merits of plaintiffs' state law claims found in Counts II (implied contract) and Count III (misrepresentation and negligence). Under these circumstances, plaintiffs' state law claims are best left for state courts, and thus the Court will dismiss Counts II and III without prejudice. *See Koke*, 620 F.2d at 1346.

---

**5.** Plaintiffs should have listed Wilkinson as a defendant in the caption of their amended complaint, Fed.R.Civ.P. 10(a), but their failure to do so does not mean that they cannot maintain an action against him. *Greenwood v. Ross*, 778 F.2d 448, 451–52 (8th Cir.1985). Here, the body of the amended complaint makes a number of explicit references to Wilkinson, and Wilkinson has been served; thus plaintiffs can pursue their

action against him. *See* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1321, at 460–61 (1969).

**6.** Plaintiffs' amended complaint also seeks to enjoin defendants from devaluing plaintiffs' loan collateral, except as clearly warranted under plaintiffs' specific circumstances.

722

Based on the foregoing, IT IS ORDERED That plaintiffs' motion for a preliminary injunction is denied.

IT IS FURTHER ORDERED That Counts I, IV, and V of plaintiffs' amended complaint are dismissed with prejudice.

IT IS FURTHER ORDERED That Counts II and III of plaintiffs' amended complaint are dismissed without prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.