**Dennis MENDEL and Thelma Mendel, Husband and Wife, Plaintiffs,**

**v.**

**PRODUCTION CREDIT ASSOCIATION OF THE MIDLANDS, Formerly Mitchell-Huron Production Credit Association, Defendant.**

**PRODUCTION CREDIT ASSOCIATION OF THE MIDLANDS, f/d/b/a Mitchell-Huron Production Credit Association, Plaintiff,**

**v.**

**Dennis MENDEL and Thelma Mendel, Defendants.**

Civ. Nos. 86–4098, 86–4104.

United States District Court, D. South Dakota, S.D.

April 3, 1987.

Fred Hendrickson, Sioux Falls, S.D., for Dennis and Thelma Mendel.

Steven M. Johnson, Yankton, S.D., for Production Credit Ass'n.

## MEMORANDUM OPINION AND ORDER

JOHN B. JONES, District Judge.

### FACTS

Dennis and Thelma Mendel (Mendels) started doing business with the Mitchell-Huron Production Credit Association, now Production Credit Association of the Midlands (PCAM) in 1979. The loans involved in these actions were made in 1985, with PCAM taking a security interest in the

Mendels' farm machinery. Mendels also made an oral request for an additional loan in 1986 which was denied. At PCAM's request, the Mendels sold the farm machinery securing the 1985 debt, and the proceeds of $32,276.32 are being held by the Clerk of this court.

## ISSUES

The Mendels sued PCAM in state court for damages, alleging breach of express and implied contract, breach of fiduciary duty and negligence. That action was removed to this Court as CIV 86–4104. PCAM sued the Mendels in this Court in CIV 86–4098, alleging that Mendels owed it $37,319.52 plus interest, asking that the proceeds of the sale of collateral be applied to the debt, and requesting that it receive judgment for the deficiency. PCAM made a motion for summary judgment in both actions, and the motion was heard on January 5, 1987.

This Court has diversity jurisdiction in both actions.

The issue in CIV 86–4104 is whether the Mendels can maintain an action for damages based on either (1) the Farm Credit Act of 1971 (FCA), 12 U.S.C.A. sections 2001 *et seq.* (1980 & Supp.1986), (2) the Farm Credit Amendments Act of 1985 (1985 Amendments), Pub.L. No. 99–205, 99 Stat. 1678, or (3) on state law.

The issues in CIV 86–4098 are the amount of the Mendels' indebtedness to PCAM, and whether PCAM has any claim to the proceeds of the sale of Mendels' farm personal property.

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "only when the moving party satisfies its burden of showing the absence of a genuine issue as to any material fact and that it is entitled to judgment as a matter of law." *Foster v. Johns-Manville Sales Corp.*, 787 F.2d 390, 391 (8th Cir.1986). Accordingly, "the court must view the facts in the light most favorable to the opposing party and must give that party the benefit of all reasonable inferences to be drawn from the facts." *Id.* at 392.

## MENDELS' DAMAGE CLAIM IN
## CIV 86–4104

### 1. *Claims based on the Farm Credit Act.*

■ The Mendels allege that PCAM violated several provisions of the FCA and its accompanying regulations, namely: (1) PCAM did not follow 12 C.F.R. section 612.2135 (1986) ("directors and employees shall observe, to the best of their abilities, the letter and intent of all applicable laws, regulations, rules, policy statements, instructions, and procedures of the Farm Credit Administration and System institutions...."), (2) PCAM did not loan the Mendels funds at the lowest possible cost contrary to 12 U.S.C.A. section 2075 (Supp. 1986) ("In setting the rates and charges, it shall be the objective to provide the types of credit needed by eligible borrowers, at the lowest reasonable costs...."), (3) PCAM has not distributed profits to its stockholders contrary to 12 U.S.C.A. section 2094(i)(1980) ("Dividends on stock, other than preferred stock ... may be paid by an association....") and 12 U.S.C.A. section 2095(b) (Supp.1986) ("available net earnings at the end of any fiscal year may be distributed on a patronage basis in stock, participation certificates, or in cash."), (4) PCAM did not notify the Mendels of its policy of forbearance contrary to 12 C.F.R. section 614.4510(b)(1) (1986) ("The policy shall provide a means of forbearance for cases when the borrower is cooperative, making an honest effort to meet the conditions of the loan contract, and is capable of working out of the debt burden."), (5) PCAM failed to follow its policy for lending under stress conditions contrary to the "Statement on Lending Under Stress Conditions" contained in the 50th Annual Report of the Farm Credit Administration 19–20 (1983) ("The Federal Farm Credit Board reaffirms the system's longstanding policy of forbearance—that is, sticking with a borrower so long as there appears to be a reasonable possibility for him to work out of financial difficulties and reestablish a fully viable farm business."), and (6) PCAM failed to inform the Mendels when they applied for their loans

of their borrower's rights as set out in 12 U.S.C.A. sections 2201 and 2202 (1980 & Supp. 1986).

PCAM correctly asserts that the Farm Credit Act, together with accompanying regulations and policy statements, does not support a private cause of action under the facts of this case. *See, Smith v. Russellville Production Credit Association,* 777 F.2d 1544, 1547–48 (11th Cir.1985); *Brekke v. Volcker,* 652 F.Supp. 651 (D.Mont.1987); *Creech v. Federal Land Bank of Wichita,* 647 F.Supp. 1097, 1101 (D.Colo.1986); *Aberdeen Production Credit Association v. Jarrett Ranches, Inc.,* 638 F.Supp. 534, 536–37 (D.S.D.1986); *Corum v. Farm Credit Service,* 628 F.Supp. 707, 719–20 (D.Minn.1986); *Spring Water Dairy, Inc. v. Federal Intermediate Credit Bank of St. Paul,* 625 F.Supp. 713, 718–20 (D.Minn. 1986); *Apple v. Miami Valley Production Credit Association,* 614 F.Supp. 119, 121–22 (S.D. Ohio 1985), *aff'd,* 804 F.2d 917 (6th Cir.1986); *Birbeck v. Southern New England Production Credit Association,* 606 F.Supp. 1030, 1037 (D.Conn.1985); *Bowling v. Block,* 602 F.Supp. 667, 671 (S.D.Ohio 1985), *aff'd,* 785 F.2d 556, 557 (6th Cir.) *cert. denied,* —— U.S. ——, 107 S.Ct. 112, 93 L.Ed.2d 60 (1986); *Hartman v. Farmers Production Credit Association of Scottsburg,* 628 F.Supp. 218, 220–22 (S.D. Ind.1983). *Contra Delaigle v. Federal Land Bank of Columbia,* 568 F.Supp. 1432, 1437 (S.D.Ga.1983) (held 12 C.F.R. section 614.4510 had force and effect of law).

12 U.S.C.A. sections 2201 and 2202 do grant loan applicants certain rights. *See e.g., Spring Water Dairy,* 625 F.Supp. at 718. In this action, however, the Mendels are not asking this Court to force PCAM to follow the mandates of those sections. They are instead seeking damages for their alleged violation. The Mendels, therefore, do not appear as loan applicants, and sections 2201 and 2202 will not support an action for damages.

The Farm Credit Act, therefore, gives the Mendels no cause of action for damages, and PCAM is entitled to summary judgment on these claims.

**2. *Claims based on the Farm Credit Amendments Act of 1985.***

The Mendels assert that Title III of the 1985 Amendments, and the accompanying legislative history, give them the right to bring a private cause of action thereunder. They argue that PCAM violated several provisions of the 1985 Amendments, namely: (1) PCAM did not develop a policy governing forbearance and did not provide the Mendels with a copy of its forbearance policy in violation of section 301 of the 1985 Amendments, (2) PCAM did not provide the Mendels with written notice of the reasons why their January, 1986 oral loan application was denied in violation of section 302 of the 1985 Amendments, (3) PCAM did not provide the Mendels with notice of their right to appeal the denial of their January, 1986 oral loan application to a credit review committee that included farm board representation in violation of section 304 of the 1985 Amendments, and (4) PCAM did not review the Mendels' loan once it was placed in non-accrual status to determine whether it could be restructured and did not notify the Mendels that they had a right to such review under section 307 of the 1985 Amendments.

The reported cases referred to above do not address the issue of whether the 1985 Amendments create a private cause of action. The 1985 Amendments do not expressly state that they are enforceable in a private cause of action. This Court, therefore, must determine whether a private cause of action can be implied. In doing so, the 1985 Amendments must be analyzed under the four-part framework established by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). Under this framework, this Court must determine whether: (1) the plaintiff is one of the class for whose especial benefit the statute was enacted, (2) there is any indication of legislative intent, explicit or implicit, either to create such a remedy or deny one, (3) it is consistent with the underlying purpose of the legislative scheme to imply such a remedy for plaintiff, and (4) the cause of action is one

traditionally relegated to state law, in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action based on federal law. *Cort v. Ash,* 422 U.S. at 78, 95 S.Ct. at 2088. "The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Touche Ross,* 442 U.S. 560, 579, 99 S.Ct. 2479, 2488, 61 L.Ed.2d 82 (1979).

The caption of Title III of the 1985 Amendments is "Protection for Farmers and Other Farm Credit System Borrowers." Section 301(b), codified as 12 U.S. C.A. section 2199 (Supp.1986), requires system institutions to develop a policy of forbearance and to provide borrowers with a copy of that policy. Section 302 amended 12 U.S.C.A. section 2201 to require written notice of action on an application, including reasons for denial or reduction of the requested loan. Section 303 amended 12 U.S. C.A. section 2202 to require that credit review committees include farm board representation and made other changes in the application review process. Section 307 requires that each loan on non-accrual status must be reviewed to determine whether the loan may be restructured. All of these sections are designed to benefit farmer/borrowers having difficulty paying their debts or receiving additional financing.

By its terms, therefore, the 1985 Amendments were designed to benefit the special class of farmer/borrowers having difficulty paying their debts and receiving additional financing, and the Mendels are a member of that class.

The second prong of the *Cort v. Ash* test, whether Congress intended, explicitly or implicitly, to create a private cause of action under the 1985 Amendments, is the critical factor in determining whether a private cause of action exists. The key inquiry under this prong is whether "the statute by its terms grants ... private rights to any identifiable class [or] proscribes [any] conduct as unlawful." *Touche Ross,* 442 U.S. at 576, 99 S.Ct. at 2489. The legislative history shows that Congress explicitly intended that the borrowers rights portion of the amendments

be enforceable through a court action. 131 Cong.Rec. H11518–19 (Dec. 10, 1985). In response to a question of whether the borrowers' rights in the 1985 Amendments would be enforceable in a court of law, Representative De la Garza replied:

> Yes ... a major section of this bill does establish a set of borrowers' rights, and it would be my understanding that the rights of applicants and member-borrowers as set forth in this act and in the regulations of the Farm Credit Administration shall be enforceable in courts of law.

Thus, both by the language of the amendments and by their legislative history, it is apparent that Congress intend that the 1985 Amendments create substantive rights enforceable through a private cause of action.

The third inquiry under *Cort v. Ash* is whether the private cause of action asserted is consistent with the underlying purpose of the legislative scheme. The Mendels seek to recover actual damages of $460,000 and punitive damages of $350,000.

■ Besides Title III dealing with borrowers' rights, the 1985 Amendments major goal was to shore up a financially unstable Farm Credit System. *See* H.Rep. No. 425, 99th Cong., 1st Sess. 2–11 (1985), U.S.Code Cong. & Admin.News 1985, pp. 2587, 2588–2598. Allowing farmer/borrowers who were not given their Title III rights to recover substantial monetary damages is completely inconsistent with the underlying purpose of the 1985 Amendments. Farmer/borrowers can enforce the 1985 Amendments as defenses in foreclosure actions or in other actions to force compliance therewith, but they cannot be made the basis for damage claims against the Farm Credit System. PCAM, therefore, is entitled to summary judgment on the Mendels' damage claims under the 1985 Amendments.

Because I find that the Mendels cannot rest their damage claims upon the 1985 Amendments as it would be inconsistent with the legislative scheme, it is unnecessary to consider the fourth prong of the *Cort v. Ash* test.

### 3. *Claims based on state law.*

The Mendels' state law claims can be classified into three general groups. The first group alleges that, under South Dakota common law, the FCA creates express and implied contract terms, fiduciary duties and standards of care. The Mendels claim PCAM breached those duties and standards of care by not following the FCA, its regulations and its accompanying policy statements. The second group of claims is identical to the first except that they are based on the 1985 Amendments. The third group of claims are brought directly under South Dakota common law and allege bad faith, unlawful officer compensation and unlawful operation in South Dakota.

■ Only one state court has directly addressed the question of whether the FCA creates duties that can support an action based on state common law theories. In *Production Credit Association v. Van Iperen,* 396 N.W.2d 35 (Minn.App.1986), *review denied* (1987), the Minnesota Court of Appeals held that it could not. *Van Iperen,* 396 N.W.2d at 38. The *Van Iperen* court declined to impose dutiful or obligatory compliance with the FCA on PCAs under state law because the act does not establish duties or obligations owed by a PCA to its borrowers. *Id.* I agree with the *Van Iperen* holding and reasoning. As mere statements of policy designed to guide discretion, the FCA, its regulations and accompanying policy statements do not create contractual or fiduciary duties nor do they provide a dutiful standard of care. Accordingly, PCAM's motion for summary judgment on the Mendels' state law claims based on the FCA in their suit for damages is granted.

■ The Mendels' second group of state law claims alleges that PCAM breached South Dakota common law duties and standards of care when it failed to follow the 1985 Amendments. For the reasons stated above, the 1985 Amendments will not support a cause of action for damages. This is true whether the action is brought directly under the amendments or under state law and PCAM's motion for summary judgment on these claims is granted.

■ The Mendels' final group of state law claims are brought directly under the common law. The Mendels allege that PCAM violated the S.D.C.L. section 57A–1–203 (1980) duty of good faith and fair dealing. The facts alleged to support this claim, however, disclose its true nature. In effect, the Mendels argue that because PCAM did not exercise forbearance, it breached a duty of good faith. Lack of forbearance will not support either a federal or state cause of action, and PCAM is entitled to summary judgment on this claim.

Any additional claims not discussed above I have found to be without merit.

### 4. *Conclusion.*

Neither the FCA nor its 1985 Amendments create duties that will support a cause of action for damages based upon their breach, and the Mendels have alleged no independent state law ground that will support an action for damages. Accordingly, PCAM is entitled to summary judgment on all claims raised by the Mendels in their action for damages in CIV 86–4104.

### PCAM'S CLAIM AGAINST MENDELS IN CIV 86–4098

■ PCAM asserts that it loaned Mendels money and took a Security Agreement from them, and Mendels do not dispute this.

PCAM further alleges that there was $37,319.52 due as of May 15, 1986. The Mendels question this amount by pointing out that PCAM sent them a letter dated March 5, 1986 in which the balance due was claimed as $31,366.32. Affidavits attached to the motion for summary judgment explain the discrepancy as a computer error, and the Mendels do not make a sufficient showing to establish a factual dispute as to the amount due PCAM. I conclude that the undisputed facts establish the balance due PCAM on this date is $25,983.28 principal plus accrued interest at 13.6% of $14,453.66 for a total of $40,436.94.

Further, it is undisputed that PCAM had a security interest on the farm personal

property of the Mendels which was sold by auction and that the funds now being held by the Clerk are proceeds of the sale of that collateral. The amount in the Clerk's account, including accrued interest, now totals $32,626.38.

On these undisputed facts, PCAM's motion for summary judgment in CIV 86–4098 must be granted. PCAM is entitled to recover from the Mendels the sum of $40,-436.94. The funds held by the Clerk in the amount of $32,628.38 shall be disbursed to PCAM and the Mendels are entitled to credit therefor on PCAM's claim. PCAM is entitled to judgment against the Mendels for the balance remaining thereafter of $7,810.56, together with taxable costs herein.

IT IS SO ORDERED.