**FEDERAL LAND BANK OF JACKSON IN RECEIVERSHIP, Plaintiff,**

v.

**FEDERAL INTERMEDIATE CREDIT BANK, Defendant.**

Civ. A. No. J89–0399(B).

United States District Court, S.D. Mississippi, Jackson Division.

Oct. 31, 1989.

Harold D. Miller, Jr., Jackson, Miss., and Michael R. Ford, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, Okl., for plaintiff.

Sam E. Scott, Jackson, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

BARBOUR, Chief Judge.

This cause is before the Court on Motion of the Plaintiff Federal Bank of Jackson in Receivership ("FLBJR") to Remand the case to the state court from which it was removed by the Defendant Federal Intermediate Credit Bank of Jackson ("FICBJ"). The case was removed pursuant to 28 U.S.C. § 1331. The Plaintiff contends, however, that the action does not "arise under the laws of the United States." The Court has considered the motion and the response of FICBJ and the memoranda of authorities submitted by the parties.

## BACKGROUND

The Plaintiff and Defendant are two of approximately 400 federally-chartered, privately-owned Agricultural Lending Institutions, constituting the Farm Credit System and overseen by the Farm Credit Administration ("FCA"). The FCA is one of several agencies established under the banking provisions (Title 12) of the United States Code. The function of the FCA is similar to that of the Comptroller of Currency in that it charters, supervises and regulates lending institutions.

The Farm Credit System, ("FCS") is divided into twelve farm credit districts. At the time the events involved in this lawsuit occurred, each district contained a Federal Land Bank, a Federal Intermediate Credit Bank and a Bank for Cooperatives.[1] Each district has a board of directors elected by bank stockholders which oversees the operations of all FCS institutions in that district. 12 U.S.C. §§ 2011, 2033, 2072, 2093, 2122 and 2127. Thus, the individuals who served as district directors also served as directors for the Land Bank, the Intermediate Credit Bank and the Bank for Cooperatives in that district. *See* 12 U.S.C. § 2222 (1980). Each institution is a citizen of the state in which its principal office is located, 12 U.S.C. § 2258, and has the authority to make loans without day-to-day supervision by the FCA. 12 U.S.C. §§ 2012(6), 2072(6) and 2093(13). System institutions are not considered federal

---

1. Pursuant to Section 410 of the Agricultural Credit Act of 1987, passed subsequent to the events about which this law suit is concerned, the Federal Land Banks and Intermediate Credit Banks merged to form one "Farm Credit Bank" for each district.

agencies. *See* S.Rep. No. 350, 86th Cong., 1st Sess. 8 (1959). The FCA derives its authority from the Farm Credit Act of 1971, as amended, 12 U.S.C. § 2001, *et seq.*

The Federal Land Banks make loans and provide technical assistance and financially related services to eligible borrowers. 12 U.S.C. § 2012(6). These loans are made through borrower-owned Federal Land Bank Associations. Over the years the Federal Land Bank of Jackson ("FLBJ") made a large number of loans secured by farm and timber lands. Some of these loans were not repaid, and the FLBJ acquired lands through foreclosures. It was the policy of the FLBJ, when selling these lands after foreclosure, to retain a one-half (½) interest in any oil, gas or other mineral rights. By virtue of this policy, the FLBJ owned, as of July 1, 1987, royalty and mineral interests in nearly 2,000,000 acres of land in Mississippi, Alabama and Louisiana. Pursuant to applicable accounting procedures, the FLBJ carried the retained mineral interests on its books at a value of one dollar, even though these interests were in fact worth in excess of twenty-seven million dollars.

The FLBJ began to experience serious financial difficulties in the spring or summer of 1987. Projections made in 1987 showed that the FLBJ would have a negative capital position by September of 1987. Sometime in May or June of 1987, the directors learned that the Federal Land Bank, St. Paul, Minnesota, was planning to sell its retained minerals interests to the Federal Intermediate Credit Bank of St. Paul. That sale was designed to provide financial assistance to the St. Paul Land Bank. The St. Paul idea inspired the directors of the FLBJ to consider a similar sale. The sale would improve the capital position of the FLBJ because it would give up assets valued on the books at only one dollar but would in return receive millions of dollars in cash. Such a sale was in fact consummated on or about September 30, 1987. The transaction had little practical effect on the FLBJ, as it delayed the negative capital position of the FLBJ by only three months. Subsequently, the FLBJ was placed into receivership by order of the FCA.

## THE COMPLAINT

The Complaint of the FLBJR alleges that since the directors were representing both the buyer and the seller in the transaction, they were unfairly biased in favor of a sale within the farm credit system and neglected to consider alternatives to the sale to the FICBJ. The Complaint alleges breach of the fiduciary duty of loyalty as well as the duty to exercise ordinary care. Part of this alleged breach of the fiduciary duty of ordinary care consists of the alleged failure of the directors to follow the dictates of a September 25, 1987, Farm Credit Administrative Office of Analysis and Supervision Financial Directive No. 2. The Plaintiff alleges that the transaction failed to comply with the directive in a number of respects which will not be enumerated here. The Plaintiff seeks as a remedy an equitable adjustment of the transaction.

## QUESTION PRESENTED

The question before the Court at this time concerns the jurisdiction of this Court to hear this case. At first blush, one would think that one federally chartered institution suing another should do so in federal court; however, the question is more subtle. Since both parties are citizens of Mississippi, the asserted ground of federal jurisdiction is "federal question jurisdiction." *See* 28 U.S.C. § 1331. Section 1331 authorizes an action "arising under the Constitution, laws, or treaties of the United States," to be brought in the federal district court. Succinctly put, the question before the Court is whether this suit "arises under the Constitution, laws, or treaties of the United States." The Defendant asserts two grounds in support of its action to remove this case to federal court. For purposes of analysis, the Court will state these two grounds in the form of questions: (1) Is the September 25, 1987, Farm Credit Administration Office of Analysis and Supervision Financial Directive No. 2 a "law" of the United States for purposes of federal question jurisdiction? and (2) Do the Plaintiff's

allegations of breach of duty on the part of the directors state a cause of action under federal law, as opposed to state law, because federal law has "preempted the field"?

## ANALYSIS

I. The parties both cite *Chasse v. Chasen*, 595 F.2d 59 (1st Cir.1979) as the authoritative case on the subject of what it means that a cause of action "arises under" federal law. That case contains a two-part test for determining whether a policy pronouncement of a government agency may properly serve as the basis for jurisdiction under section 1331. The test involves weighing (1) the statutory authority for the promulgation and (2) the formality of the promulgation.

■ The financial directive at issue was not promulgated pursuant to any specific congressional authority. Even more detrimental to the defendant's case is the fact that the directive clearly lacks the requisite formality. In fact, Financial Directive No. 2 appears to be nothing more than a letter from the Office of Analysis and Supervision suggesting how best to structure sales of the type involved in this case. The directive was not promulgated in accordance with the Administrative Procedure Act, nor was it published in the Code of Federal Regulations. In short, Financial Directive No. 2 does not rise to the level of a "law of the United States." *See generally, United States v. Harvey*, 659 F.2d 62, 65 (5th Cir.1981) (loan servicing provisions of Veterans Administration manual were not "laws of the United States"); *Einhorn v. DeWitt*, 618 F.2d 347 (5th Cir.1980) (internal revenue regulation not a "law" of the United States); *United States v. Fifty Three (53) Eclectus Parrots*, 685 F.2d 1131, 1136 (9th Cir.1982) (provision in Customs Service manual not a "law" of the United States); *Lumber, Production and Industrial Workers Log Scalers v. United States*, 580 F.Supp. 279, 283 (D.Or.1984) (provision in U.S. Forest Service manual not a "law" of the United States); and *Kodish v. United Airlines, Inc.*, 463 F.Supp. 1245, 1251 (D.Co.1979) (Executive Order not a "law" of the United States).

■ More fundamentally, however, even if Financial Directive No. 2 could be considered to be a "law" of the United States, the Court alternatively finds and holds that this suit in no way "arises under" that law or any other law of the United States.

Professors James and Hazzard of Yale have succinctly stated the test of "arising under" as follows:

> For purposes ... of ... federal question jurisdiction ... the term "arises under" or "arising under" is a technical one. It has the following significance:—The Plaintiff's claim, stated in accordance with pleading rules, must rest upon federal law.

> —To rest upon federal law, the plaintiff's right of action must be expressly conferred by federal statute or implied from a statute ... that creates a duty of which plaintiff is the beneficiary.

F. James & J. Hazzard, *Civil Procedure* § 2.6 at 59–60 (3d ed. 1985). The cases are numerous construing both the Farm Credit Act and the regulations promulgated pursuant thereto, and they are unanimous in holding that neither the act nor the regulations create any private right of action. *See, e.g., Mendel v. Production Credit Ass'n of the Midlands*, 656 F.Supp. 1212 (D.S.D.1987), *aff'd*, 862 F.2d 180 (8th Cir. 1988); *Wiley v. Federal Land Bank of Louisville*, 657 F.Supp. 964 (S.D.Ind.1987); *Kolb v. Naylor*, 658 F.Supp. 520 (N.D.Iowa 1987). These cases are arguably distinguishable because they involve a third party, usually a borrower, suing a federal credit institution. The clear language of these cases, however, is instructive. In affirming the district court in *Mendel*, the Eighth Circuit stated:

> This court has held that even where a federal act does not create the private cause of action for a violation of the standards of conduct it prescribes, it may be that conduct violating the standards will give rise to a state common law cause of action. *Whether it does so is a question for the courts of the particu-*

*lar state.* [citations omitted]. (Emphasis added).

*Mendel,* 862 F.2d at 183. The district court in *Mendel* stated:

As mere statements of policy designed to guide discretion, the FCA, its regulations and accompanying policy statements, to do not create contractual or fiduciary duties nor do they provide a dutiful standard of care.

*Mendel,* 656 F.Supp. at 1217. Minnesota's court of appeals went so far as to decline to recognize a state law cause of action based on non-compliance with the Farm Credit Act because the court considered that the Act provided only policy rather than a substantive rule. *Production Credit Ass'n of Worthington v. Van Iperen,* 396 N.W.2d 35, 38 (Minn.App.1986).

From this it is clear that the Plaintiff's suit does not arise under the Farm Credit Act or any financial directive issued pursuant thereto, nor could it. The claims stated in this case arise under state law concepts of fiduciary responsibilities of directors.

II. The Defendant's second argument in favor of federal district court jurisdiction relies upon the doctrine of preemption as was discussed in *Rettig v. Arlington Heights Savings & Loan Association,* 405 F.Supp. 819 (1975). In *Rettig,* the district court held that where federal substantive law is found to be controlling, either by reason of the exclusive jurisdiction of the federal court, or federal preemption, the suit is properly removable, and the plaintiff may not defeat removeability by attempting to draft the complaint around what is essentially a federal cause of action. *Rettig,* 405 F.Supp. at 823. In *Rettig,* several plaintiffs sued their respective savings and loan associations in a consolidated action on behalf of all depositors charging, *inter alia,* that each defendant association, in connection with its loans, placed homeowners', fire, theft and other types of insurance through insurance agencies owned by the defendant savings and loan directors and officers. The plaintiffs contended that the defendant directors and officers fraudulently diverted to themselves a business opportunity available to the association, and thereby breached their fiduciary duty to the association. The defendants removed each of the cases to the federal district court, asserting federal jurisdiction based upon 28 U.S.C. §§ 1331 and 1337. They alleged that the plaintiffs' cause of action actually arose pursuant to the Homeowners' Loan Act, a federal statute. The district court upheld the removal based on the doctrine of federal preemption. The court found that federal law had occupied the entire field of federal savings and loan associations. The court noted that the Federal Home Loan Bank Board had promulgated comprehensive rules and regulations, "covering all aspects of every federal and savings and loan association from its cradle to its corporate grave." *Rettig,* 405 F.Supp. at 823, *citing Kupiec v. Republic Federal Savings & Loan Ass'n,* 512 F.2d 147, 149 (7th Cir.1975). Thus, by virtue of the plenary powers vested in the Federal Home Loan Bank Board by the Homeowner's Loan Act, the courts have consistently recognized the congressional intent to have federal law govern the regulation and supervision of federal associations. *Id.*

■ No such comprehensive preemption scheme exists with regard to Farm Credit System institutions. In *Boyster v. Roden,* 628 F.2d 1121 (8th Cir.1980), the plaintiffs sought damages against the defendants for alleged violation of fiduciary duties under the laws of the United States and under the laws of the State of Arkansas. The complaint alleged in essence that the defendant Roden, in his capacity as vice-chairman of the board of directors of the White River Production Credit Association, a production credit association organized and existing under the laws of the United States, passed along confidential information that he obtained through his position to other defendants, who used the information to buy the plaintiffs' farm land at a foreclosure sale. The plaintiffs sued in federal court, alleging that the matter in controversy arose under the *common law* of the Unites States. The Eighth Circuit held that claims which allege violations of fiduciary relationships arise under state, rather than federal law, and thus federal jurisdiction does

not lie with regard to such claims. The court found that there was no need to "override state law with federal common law in respect to the obligations a production credit association fiduciary owes to a loan applicant." *Boyster*, 628 F.2d at 1124. The court stated:

> We are not persuaded that the substantial federal interest in successful operation of the farm credit system will be impaired by application of state law to appellant's claims. Even if the fiduciary law varies somewhat from state to state, no burden to the system is perceived; each production credit association is a separate entity with a local situs, and its business transactions are with farmers and ranchers in its locale. Appellants have failed to specifically show any significant conflict between some federal policy or interest and the use of state law, nor have they shown that state law is inadequate to protect their rights.

*Id.* at 1125.

In *Birbeck v. Southern New England Production Credit Association*, 606 F.Supp. 1030 (D.Conn.1985), the district court followed *Boyster*, but dealt specifically with the preemption argument. The court stated:

> Glaring evidence that Congress did not intend that federal law preempt the field with respect to federal land banks and production credit associations can be found in the 1980 amendments to the Farm Credit Act, specifically 12 U.S.C. § 2214, which provides that state and other laws shall apply to service corporations organized pursuant to part D of that legislation to the same extend that such laws would apply to the organizing banks already existing under the Farm Credit System that were engaged in the same activity and the same jurisdiction.

*Birbeck*, 606 F.Supp. at 1041. The court went on to state that the necessary implication of section 2214 is that federal law has not preempted the field with respect to banks chartered under the Farm Credit Act. The court further held that an overview of the Farm Credit Act and its legislative history reveals that institutions within the Farm Credit System were meant to be treated as local, privately-owned entities and citizens of the states in which their principal offices were located, and subject to state law. *Id.* The court specifically rejected the plaintiffs' reliance on cases involving federal savings and loan associations, including *Rettig*, principally because unlike the Farm Credit System, federal law has almost completely preempted the regulation and supervision of federal savings and loan associations. *Id.* It is true that *Boyster* and *Birbeck* are factually distinguishable from the instant case, but their reasoning is compelling. Federal law has not preempted the regulation and supervision of the Farm Credit System.

### CONCLUSION

In sum, the Court finds that this case has been improperly removed to federal court and hereby orders that it be remanded.

SO ORDERED.