James E. **EBENHOH**, et al., Appellants,

v.

**PRODUCTION CREDIT ASSOCIATION OF SOUTHEAST MINNESOTA, f/k/a Production Credit Association of Blooming Prairie and Production Credit Association of St. Charles, Respondent.**

No. C6–88–442.

Court of Appeals of Minnesota.

July 26, 1988.
Review Denied Sept. 28, 1988.

James M. Corum, Scott J. Strouts, Minneapolis, for appellants.

Christine M. Schild, O'Brien, Ehrick, Wolf, Deaner & Downing, Rochester, for respondent.

Heard, considered and decided by FORSBERG, P.J., and LANSING and SCHULTZ, JJ.

## OPINION

HAROLD W. SCHULTZ, Judge [*].

Appellants James and Carma Ebenhoh sued respondent Production Credit Association of Southeast Minnesota (PCA). The trial court granted PCA's motion for summary judgment, and Ebenhohs appealed, alleging the trial court erred in finding no implied cause of action for violation by PCA of its internal lending policies and in determining appellants failed to state a claim on which relief may be granted. We affirm.

## FACTS

James and Carma Ebenhoh are farmers who, since 1973, have borrowed money from PCA. In 1985, appellants and PCA entered into an agreement whereby appellants deeded certain real estate to PCA in lieu of foreclosure.

Appellants commenced this suit in 1986 against PCA and PCA's supervising agency, St. Paul Federal Intermediate Credit Bank (FICB), alleging breach of contract and negligence. Following the Minnesota Supreme Court's decision in *Production Credit Association of Mankato v. Buckentin,* 410 N.W.2d 820 (Minn.1987), FICB was dismissed as a party and appellants amended their complaint.

In their amended complaint, appellants advanced two separate theories for recovery against PCA. In their first cause of action, appellants alleged:

### II.

At all times material herein, PCA has held itself out as possessing expertise in the making, servicing and restructuring of operating loans to farmers, and in the furnishing of related services, including financial and farm business advice.

### III.

Contrary to their holding out of farm-credit expertise, *Defendant violated its own policies and standards for making sound operating loans,* and negligently gave Plaintiffs detrimental financial advice and made negligent loan decisions concerning Plaintiffs' loans. As a direct and proximate result of said misrepresentations and negligence, Plaintiffs suffered damages in excess of $50,000.00, to be proven with specificity at the trial hereof.

In their second cause of action, appellants alleged:

### II.

PCA owed Plaintiff contractual duty to act in fairness and good faith in all of its dealings with Plaintiffs.

### III.

*PCA breached this duty by violating its own policies and standards* in the making and servicing of plaintiffs loans. As a direct and proximate result of the breach of contractual duty by PCA, plaintiffs were damaged in a sum in ex-

[*] Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

cess of $50,000.00, which will be proven with specificity at trial.

(Emphasis added.)

PCA moved for judgment on the pleadings or, alternatively, for summary judgment on the grounds that a Farm Credit borrower may neither sue PCA for an alleged violation of the Farm Credit Act, regulations, or policies promulgated pursuant to that Act nor base a state law claim for negligence or breach of contract upon duties arising out of the Act, its regulations, or policies. The trial court granted PCA's motion for summary judgment.

## ISSUES

1. Did the trial court err in determining there is no private cause of action for violation by PCA of its internal lending policies?

2. Did appellants state a cause of action on which relief may be granted?

## ANALYSIS

1. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn.R.Civ.P. 56.03. In this case, the trial court concluded appellants had no cause of action based on respondent's internal lending policies. On appeal, this court must determine whether the trial court erred in its application of the law. Summary judgment is appropriate if the material facts are undisputed and, as a matter of law, compel only one conclusion. *See A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.*, 260 N.W.2d 579, 581 (Minn.1977).

▪ There is no private cause of action for violations of, or noncompliance with, the Farm Credit Act, 12 U.S.C. § 2001 et seq. (1984), or regulations promulgated pursuant to the Act. *Production Credit Association of Worthington v. Van Iperen*, 396 N.W.2d 35, 37–38 (Minn.Ct.App. 1986), *pet. for rev. denied* (Minn. Jan. 21, 1987); *Johansen v. Production Credit As-*

*sociation of Marshall–Ivanhoe*, 378 N.W. 2d 59, 62 (Minn.Ct.App.1985).

This denial of a private cause of action is based on the absence of specific enforceable rights created by the Act which require the existence of a private cause of action for their enforcement. *Bowling v. Block*, 602 F.Supp. 667, 670–71 (S.D.Ohio 1985), *aff'd*, 785 F.2d 556 (6th Cir.), *cert. denied sub nom. Bower v. Lyng*, 479 U.S. 829, 107 S.Ct. 112, 93 L.Ed.2d 60 (1986). This court has refused to impose obligatory compliance with the Act because of its nonsubstantive nature. *Van Iperen*, 396 N.W. 2d at 38. In the absence of a duty or obligation owed appellants by respondent, there is no state private cause of action. *Id.* The question is whether the rationale of *Van Iperen* and *Johansen* should be extended to PCA's internal lending policies.

Production credit associations were chartered in 1933 and funded by government loans. These loans were paid off in 1968. Although PCAs are now privately owned, organized and operated corporations, they remain federal instrumentalities, operated pursuant to congressional mandate. In 1971, Congress reaffirmed this status in an amendment to the Farm Credit Act, stating, "[e]ach production credit association * * * shall continue as a federally chartered instrumentality of the United States." Pub.L. No. 92–181, § 2.10, 85 Stat. 583 (1971). *See Smith v. Russellville Production Credit Association*, 777 F.2d 1544, 1550 (11th Cir.1985).

Courts that have considered the question have generally concluded there is no private cause of action for violation of regulations promulgated pursuant to the Act. *See, e.g., Smith*, 777 F.2d at 1547–48 (forbearance regulation, 12 C.F.R. § 614.4510(d)(1), does not have force and effect of law; rather, it is statement of agency policy which will not support private cause of action); *Spring Water Dairy, Inc. v. Federal Intermediate Credit Bank of St. Paul*, 625 F.Supp. 713, 719 (D.Minn.1986) ("a regulation cannot provide the basis for an implied cause of action when the statute does not."). *Cf. DeLaigle v. Federal Land Bank of Columbia*, 568

F.Supp. 1432, 1436–37 (S.D.Ga.1983) (forbearance regulations require that lender advise borrower of loan servicing techniques).

Under the statutory scheme, the PCAs are subject to control by the FICBs. *See, e.g.,* 12 U.S.C. § 2072(14) (Supp.1988) ("[e]ach Federal intermediate credit bank * * * shall have power to * * * [d]elegate to the production credit associations such functions as it may determine."); *id.* § 2072(17) (1984) (FICB has power to "[c]onduct studies and make and adopt standards for lending."); 12 C.F.R. § 614.4050 (1987) ("[w]here credit decisions are vested in associations by law or through delegated authority, district policies, and procedures shall be designed to regulate, control, and review the extension of credit. * * * The banks shall supervise the credit operations, monitor associations performance and * * * assist and supervise associations in the credit training of employees and loan committees."); *id.* § 614.4051 (setting forth specific areas FICB must evaluate for each PCA in the district annually); *id.* § 614.4060 ("[a]ssociations shall conduct their credit operations within their vested or delegated authority in compliance with the guidelines of these regulations and procedures of the district bank.").

■ Contrary to appellants' argument, PCA's lending policies are not readily severable from credit and lending policies of the Farm Credit Agency and FICB. While there is, as appellants point out, a difference between forbearance policies promulgated by the Farm Credit Agency and the internal lending policies of PCA, those internal lending policies are not created by PCA on its own. Rather, they are passed by PCA's board of directors, subject to approval by FICB. For this reason, we refuse to permit a private cause of action based on the internal lending policies of PCA that could not be based on the Act itself or regulations promulgated pursuant thereto. There is simply nothing that indicates PCA's internal lending policies create specific enforceable rights.

2. Appellants assert the trial court erred in determining their suit was based on the internal policies of PCA. Instead, they claim the suit was based on common-law claims of breach of contract and negligence; the policies merely provide a standard of care by which PCA's actions must be viewed in determining the common-law claims.

■ Common-law claims against a PCA are not barred. *Van Iperen,* 396 N.W.2d at 37; *Johansen,* 378 N.W.2d at 62.

> To establish a state private cause of action here, respondent would have to owe appellants a duty or obligation based on agency policy. Given the nonsubstantive nature of the Farm Credit Act, we decline to impose such dutiful or obligatory compliance.

> \* \* \* \* \* \*

> We will not impose an obligation and remedy when the statute cannot be interpreted to create one.

*Van Iperen,* 396 N.W.2d at 38.

■ The internal lending policies of PCA are similar to Farm Credit Agency regulations, as discussed above. Such regulations do not create a standard of care. *Mendel v. Production Credit Association of the Midlands,* 656 F.Supp. 1212, 1217 (D.S.D.1987) (citing *Van Iperen* ). Based on *Mendel* and *Van Iperen,* PCA's internal lending policies cannot create a standard of care, breach of which would give rise to a common-law claim for breach of contract or negligence.

### DECISION

Violation by PCA of its internal lending policies does not create an implied cause of action. Appellants failed to state a claim on which relief may be granted.

Affirmed.