PRODUCTION CREDIT ASSOCIATION OF WEST
CENTRAL WISCONSIN, Plaintiff-Respondent-Cross
Appellant, †

v.

Donald W. VODAK, and Bernadine Vodak,
Defendants-Appellants-Cross Respondents.†

Court of Appeals

*No. 88–0413. Submitted on briefs November 9, 1988.—Decided
May 25, 1989.*

(Also reported in 441 N.W.2d 338.)

†Petition to review and cross review denied.

For the defendants-appellants-cross respondents, the cause was submitted on the briefs of *Donald J. Harman,* and *Harman & Kelly, Ltd.,* of La Crosse.

For the plaintiff-respondent-cross appellant the cause was submitted on the briefs of *Roy L. Prange, Jr.,* and *Ross & Stevens, S.C.,* of Madison.

Before Gartzke, P.J., Dykman and Sundby, JJ.

SUNDBY, J. Donald Vodak and Bernadine Vodak appeal from a summary judgment granting the Production Credit Association of West Central Wisconsin replevin of pledged collateral, permitting PCA to apply for a determination of deficiency following disposition of the collateral, and dismissing the Vodaks' counterclaims. PCA cross-appeals from that part of the judgment determining that the Vodaks stated viable counterclaims for damages resulting from PCA's alleged negligent financial advice and breach of fiduciary duty. We reverse that part of the judgment which dismissed the Vodaks' counterclaims and affirm the judgment in all other respects.

## I.

## BACKGROUND

In 1978 the Vodaks traded their farm in Vernon County for a more valuable farm in Richland County. PCA financed the trade. In 1979 the Vodaks approached PCA for a construction loan to build half a barn to house more cattle. PCA refused to finance the construction but agreed to finance the construction of an entire barn. For that purpose, on September 20, 1979, a PCA loan officer prepared a Request For Loan Note Guarantee to the

Farmer's Home Administration to obtain a loan guarantee of ninety percent of the principal and interest of a $100,000 loan. The Request included an agreed-upon plan of operation, projected income and expenses, a debt repayment schedule, a proposed development plan, and a long-time farm and home plan.

On April 4, 1983, PCA loaned the Vodaks an amount not to exceed $261,631, representing a refinancing of previous loans and an additional loan. The loan was evidenced by a Basic Loan Agreement dated December 16, 1980, and a Supplementary Loan Agreement effective January 31, 1983. Under the agreements, the balance remaining due, after required payments, was payable on December 1, 1983. An addendum to the Supplementary Loan Agreement imposed requirements on the Vodaks' farm operation which are discussed in part VI. A. 2. of this opinion.

On January 24, 1984, the Vodaks executed and delivered to PCA an amended security agreement which pledged the farm equipment, livestock and poultry, milk, crops, accounts receivable, and entitlements to secure payment of the Vodaks' obligations to PCA. The Vodaks defaulted on their loan agreements and PCA began this action to enforce its security agreement. The Vodaks answered and filed two counterclaims which sought damages from PCA for negligent financial advice and violation of PCA's fiduciary duty to them. The trial court concluded that the Vodaks stated viable claims but that their claims were time-barred. It granted PCA's motion for summary judgment on its claim and dismissed the Vodaks' counterclaims.

## II.

## CLAIMS

On summary judgment, we review the record *de novo. U.S. Fidelity v. Goldblatt Bros.,* 142 Wis. 2d 187, 190, 417 N.W.2d 417, 419 (Ct. App. 1987). We first examine the pleadings to determine whether claims are stated and a material factual issue is presented. *In re Cherokee Park Plat,* 113 Wis. 2d 112, 116, 334 N.W.2d 580, 582–83 (Ct. App. 1983). We are concerned with three claims: PCA's claim on its security agreement and the Vodaks' two counterclaims.

The Vodaks allege as an affirmative defense that PCA's claim fails because of failure of consideration. The Vodaks' first counterclaim alleges that they were damaged by PCA's negligent financial advice. Their second counterclaim alleges that they were damaged by PCA's breach of its fiduciary duty to them. PCA's amended reply to the Vodaks' counterclaims alleges, among other allegations, that the counterclaims do not state claims, are not supported by the record, and are barred by the statute of limitations. We conclude that the pleadings show that claims are stated and material issues of fact exist.

## III.

## DECISION

We next examine the moving party's proof to determine whether that party has made a prima facie case for summary judgment. *Cherokee Park Plat,* 113 Wis. 2d at 116, 334 N.W.2d at 583. If the moving party has made a prima facie case for summary judgment, we examine the

opposing party's proof to determine whether a trial is necessary. *Id.*

From our examination of the pleadings and the affidavits supporting and opposing PCA's motion for summary judgment, we conclude: (1) The Vodaks' affirmative defense of failure of consideration is, at best, a defense of partial failure of consideration, which they have not pled. We construe their affirmative defense as an attempt to rescind the security agreement because of PCA's breach. The Vodaks are not entitled to rescind the agreement because they are in default. (2) A genuine dispute exists as to when the Vodaks knew, or should have known, that the farm plan which PCA devised was unworkable and was damaging them. The trial court erred in concluding as a matter of law that the Vodaks' counterclaims are time-barred. (3) The Vodaks' counterclaims state claims upon which relief may be granted. (4) The pleadings and the affidavits raise disputed issues of material fact as to whether PCA was negligent in devising the farm plan. (5) The Vodaks are entitled to a trial of their counterclaims.

## IV.

## FAILURE OF CONSIDERATION FOR SECURITY AGREEMENT

■ The Vodaks claim that the security agreement is void for failure of consideration because they did not get the sound business advice they bargained for. The Vodaks' affirmative defense is, at best, a claim of partial failure of consideration. They do not deny that they received consideration—loans from PCA—in return for their promise to pay. Donald Vodak admitted that they

had an obligation to repay the loans. The security agreement secured that obligation.

"Partial failure of consideration and want of consideration are different defenses, and the one does not include the other. Want of consideration is a bar to the action, while partial failure of consideration only goes in reducing the recovery . . .." *Walter Laev Used Cars, Inc. v. Olkowski,* 25 Wis. 2d 306, 309, 130 N.W.2d 780, 782 (1964), (quoting *First Nat. Bank v. Town of Luverne,* 180 So. 283, 286 (Ala. 1938)). The Vodaks have not pled the defense of partial failure of consideration.

Further, we construe the Vodaks' affirmative defense as an attempt to rescind the contract because of PCA's breach. The Vodaks are in default and are not entitled to rescission. *E.L. Husting Co. v. Coca Cola Co.,* 205 Wis. 356, 374, 237 N.W. 85, 92 (1931).

There are no disputed issues of material fact as to PCA's claim on the security agreement. The trial court correctly granted PCA's motion for summary judgment on its claim because the Vodaks failed to plead facts or a legal principle which constitute a defense to PCA's claim.

## V.

## COUNTERCLAIMS: STATUTE OF LIMITATIONS

The parties agree that the statute of limitations applicable to the Vodaks' counterclaims is sec. 893.52, Stats.[1] The dispute is as to when the period of limitation

---

[1] The Vodaks do not dispute PCA's assertion that sec. 893.52, Stats., is the appropriate statute of limitations. The trial court considered that the proper period of limitation was six years but did not determine which statute imposed that limitation. Section 893.52, Stats., provides:

began. *See Hansen v. A.H. Robins, Inc.,* 113 Wis. 2d 550, 335 N.W.2d 578 (1983) (claim accrues when injury is, or, in exercise of reasonable diligence, should be discovered). The trial court concluded that the period of limitation began when the Vodaks had the 1980 year-end financial information. The court pointed out that the Vodaks were knowledgeable farmers and were aware of the need to pay bills and make a profit if they were to continue. The trial court found that after 1980, the Vodaks were on notice that something was wrong, and they had six years to take action. We are not bound by the trial court's finding because we review the record *de novo.*

The Vodaks make several arguments. First, because a fiduciary relationship existed between them and PCA, the period of limitation did not begin until that relationship ended. Second, because PCA made additional loans to them after the original negligent misrepresentation, the period of limitation did not begin until after the last loan was made. Finally, there are disputed issues of material fact as to when they should have known that they had been injured by the deficient farm plan.

### A.

### Existence of Fiduciary Relationship

██

We have found no authority that the mere existence of a fiduciary relationship tolls the running of a statute of limitations. Such a relationship may, however, estop

---

˙ An action, not arising on contract, to recover damages for an injury to real or personal property shall be commenced within 6 years after the cause of action accrues or be barred, except in the case where a different period is expressly prescribed.

Whether sec. 893.52 is the appropriate statute of limitations is not before us.

the fiduciary from asserting the statute of limitations. *See* cases collected in Annotation, *Fiduciary or Confidential Relationship as Affecting Estoppel to Plead Statute of Limitations,* 45 ALR 3d 630 (1972). The test as to whether a party should be estopped from asserting the statute of limitations is "whether the conduct and representations of [the party asserting the defense] were so unfair and misleading as to outbalance the public's interest in setting a limitation on bringing actions." *Hester v. Williams,* 117 Wis. 2d 634, 645, 345 N.W.2d 426, 431 (1984) (quoting *State ex rel. Susedik v. Knutson,* 52 Wis. 2d 593, 598, 191 N.W.2d 23, 26 (1971)).

PCA's conduct was not so unfair or misleading that it is estopped from asserting the statute of limitations. The Vodaks allege that PCA's acts were negligent, not fraudulent or inequitable. PCA's conduct does not fall within any of the six rules recited in *Hester,* 117 Wis. 2d at 644–45, 345 N.W.2d at 431, for resolving the issue of when estoppel should be applied to a person who asserts a statute of limitations defense. The existence of a fiduciary relationship is not within one of the rules. Whether estoppel exists is determined by the parties' conduct, not their relationship.

## B.

### Continuing Course of Conduct

The Vodaks argue that the period of limitation dates from the last loan because the entire series of loans was but one transaction. They cite *Tamminen v. Aetna Casualty & Surety Co.,* 109 Wis. 2d 536, 327 N.W.2d 55 (1982). We reject their argument.

*Tamminen* was a medical malpractice action. The court held that a cause of action for injuries from medi-

cal malpractice is timely if there is a continuing course of negligent treatment, and any portion of the continuing course of negligent treatment falls within the period of limitation. *Tamminen,* 109 Wis. 2d at 539, 327 N.W.2d at 56. The key is whether the negligent conduct is part of a continuum. *Id.* at 554, 327 N.W.2d at 63. "Where the tort is continuing, the right of action is continuing." *Id.* (quoting *Hotelling v. Walther,* 130 P.2d 944, 946 (Or. 1942)).

The gravamen of the Vodaks' counterclaims is that PCA was negligent in prescribing a farm plan that was impossible to accomplish. The period of limitation began when they discovered, or should have discovered, that they were damaged by the plan. The additional loans subsequent to initiation of the plan were separate transactions and not part of a continuum begun by the initial plan.[2]

## C.

### Farm Plan: Disputed Issues of Material Fact

The Vodaks contend that there are disputed issues of material fact as to whether they knew or should have known more than six years prior to the filing of their counterclaims that they had been damaged by PCA's farm plan.

> Summary judgment should not be granted unless the moving party demonstrates a right to judgment with such clarity as to leave no room for controversy. If the material presented on the motion is subject to

---

[2]The question of whether the Vodaks have claims arising out of such additional loans which are time-barred has not been briefed or argued and therefore we do not decide the question.

conflicting interpretations or reasonable persons may differ as to its significance, it [is] improper to grant summary judgment.

*Schlumpf v. Yellick*, 94 Wis. 2d 504, 512, 288 N.W.2d 834, 839 (1980) (citation omitted). "[S]ummary judgment should not be granted if reasonable, but differing, inferences can be drawn from the undisputed facts." *Delmore v. American Family Mut. Ins. Co.*, 118 Wis. 2d 510, 516, 348 N.W.2d 151, 154 (1984) (citation omitted).

We conclude that there are inferences which may be drawn from the facts which preclude our determining as a matter of law when the Vodaks discovered, or should have discovered, that they had a cause of action against PCA for its alleged negligence in prescribing the farm plan.

There is sufficient evidence in the record for the factfinder to infer that the Vodaks knew or should have known after the first year of operation that the farm plan could not work. Donald Vodak was an experienced farmer. The factfinder could infer that Vodak did not need the advice of PCA as to what he could afford to spend on improvements and how many cows he needed to milk. Donald Vodak, in his deposition, testified that he and Bernadine knew they could not pay their bills from "day one," when they started with PCA. On the other hand, he testified that previously he had milked a small herd and that he was doing all right before he met up with PCA; that he was just a "dumb farmer" who relied on the experts.

In her deposition, Bernadine Vodak testified that she and Donald decided to buy the Hardy farm and that they intended to increase the herd size. She kept the farm's books and reviewed the "Agrifax Management Reports" provided by PCA. She testified, however, that

she was not used to those big figures, "either to know whether they were right or wrong at that time."

The trial court relied upon Donald Vodak's admission that at the end of 1980 he and Bernadine had over $19,000 in unpaid bills. If the Vodaks' claims accrued then, their counterclaims based on the allegedly deficient farm plan are barred. The unpaid bills, however, did not reflect the profit or loss from the farm operation. The Vodaks' 1979 income tax return showed a net farm profit before depreciation of approximately $16,700. The 1980 schedule of farm income and expenses PCA prepared for the Vodaks showed a net farm profit before depreciation of approximately $21,200. The factfinder could find that the income and expense information available to the Vodaks in 1979 and 1980 was not sufficient to alert them that the farm plan was unworkable.

Donald Vodak testified that PCA was pushing too many cows for the amount of land but he relied on PCA because it was the expert. He testified that he and Bernadine "had hopes" that the situation would improve.

When asked why they continued to borrow from PCA, Donald Vodak testified that for PCA to give them additional money was like giving him money to go to Las Vegas: "if they are dumb enough to give it to me, that's the same thing."

This evidence would allow a factfinder to conclude that the Vodaks knew or should have known by at least the end of 1980 that the farm plan was unworkable. These facts would also permit a factfinder to conclude that the Vodaks were experienced in running a small dairy farm operation but not in running a farm of the size called for by the farm plan and that they relied upon PCA's advice and assistance. The factfinder could infer

from the fact that PCA continued to lend the Vodaks additional sums that PCA had confidence that the plan would succeed.

Because competing inferences arise from the evidence, summary judgment is inappropriate. *Delmore,* 118 Wis. at 516, 348 N.W.2d at 154.

## VI.

## COUNTERCLAIMS: THE MERITS

The Vodaks' first claim is that they were damaged by PCA's negligent misrepresentations and negligent loan decisions. Their second claim is that they were damaged when PCA violated its fiduciary duty by making unsound loans to them, giving them detrimental business advice, and wrongfully increasing their loans. The trial court found that the Vodaks stated "a viable counterclaim for tort."

## A.

### First Counterclaim

1. *Failure to State a Claim.* PCA contends that the Vodaks do not state a claim upon which relief may be granted. A claim will be dismissed only if it is clear that under no conditions can the plaintiff recover. *Evans v. Cameron,* 121 Wis. 2d 421, 426, 360 N.W.2d 25, 28 (1985). The specific elements of a cause of action for negligent misrepresentation, are: "(1) a duty of care or a voluntary assumption of a duty on the part of the defendant; (2) a breach of the duty (which involves a failure to exercise ordinary care in making a representation or in ascertaining the facts); (3) a causal connection between the conduct and the injury; and (4) an actual loss or

damage as a result of the injury." *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 319, 401 N.W.2d 816, 822 (1987).

The Vodaks allege that PCA represented that it possessed expertise in making and securing farm loans and in furnishing financial and farm business advice to farmers, that they were entitled to rely on PCA's representations, and that, despite its alleged expertise, PCA gave them detrimental financial and farm business advice and made "negligent" loan decisions concerning the Vodaks. The counterclaim alleges that "as a direct and prominent [sic] result of *said misrepresentations* and *negligent* loan decisions," the Vodaks suffered damages. (Emphasis added.) We conclude that the first counterclaim states a claim for negligent misrepresentation.

PCA contends, however, that *Gries v. First Nat. Bank of Milwaukee,* 82 Wis. 2d 774, 264 N.W.2d 254 (1978), and *Production Credit Ass'n v. Croft,* 143 Wis. 2d 746, 757–58, 423 N.W.2d 544, 548 (Ct. App. 1988), hold that there is no cause of action against a lending institution based upon negligence in the making of loans to customers. PCA reads *Gries* and *Croft* too broadly. In the *Gries Case,* the court pointed out that there was nothing in the record from which an inference could be drawn that the bank made false or misleading representations. 82 Wis. 2d at 779, 264 N.W.2d at 257. In *Croft* we stated that the facts as alleged "do not establish anything beyond the lender-borrower relationship which one customarily finds where a production credit association is the lender and a farm operator is the borrower." 143 Wis. 2d at 756, 423 N.W.2d at 547–48 (footnote omitted). Neither *Gries* nor *Croft* hold that a lending institution may not, under any circumstances, be liable to a customer for negligence in advising the customer on

financial decisions. The Vodaks' allegations are sufficient to state a claim upon which relief may be granted.

2. *Summary Judgment.* PCA contends that, in any event, there is nothing in the record from which an inference can be drawn that PCA made negligent representations, nor is there any evidence that the farm plan was "flawed." The Vodaks submitted affidavits opposing PCA's affidavits. Because PCA has not submitted counteraffidavits, we must accept as true the facts as stated in the Vodaks' affidavits. *See Leszczynski v. Surges,* 30 Wis. 2d 534, 539, 141 N.W.2d 261, 265 (1966) ("[E]videntiary facts stated in the affidavits are to be taken as true if not contradicted by other opposing affidavits or proof.").

Donald Vodak averred that the farm plan was unsound in that it required increasing the herd to 150 head but did not provide for maintenance of the herd. He also averred that the loans could not be repaid from the farm operation as it existed; that the increase in the size of their farm operation required skillful financial advice to assist them in getting the cash needed to make the operation function; that PCA held itself out as having this expertise, and in the area of financing, the Vodaks deferred to their judgment; and that PCA set the farm goals, the herd size, insisted on constructing the entire barn at once, did their accounting, and told them which bills they could pay and when to pay them. He claimed that PCA was more than a lender, it was their manager.

The Vodaks submitted the affidavit of the University of Wisconsin extension office agent for Richland County which incorporated computer printouts based on the actual farm operation and assumptions according to the plan prepared by PCA. The agent averred that the

311

projections showed that the operation lacked sufficient capital to pay the required debt.

The Supplementary Loan Agreement included the following: (1) the Vodaks could not make any expenditure or incur any indebtedness for tangible capital assets aggregating more than $5,000 without the written consent of PCA; (2) they were required to maintain a prescribed livestock herd size; (3) they were required to maintain insurance on all personal property; and (4) by March 10, June 10, September 10, and December 10 of each year they were required to provide PCA with an itemized written inventory of all livestock, feed stuffs, and farm equipment changes as of the end of the previous month and the quarterly status of accounts payable.

We conclude that the factfinder could infer that PCA adopted a role respecting the Vodaks' farm operation and the financial repayment plan which went beyond the role of a lender.[3] Whether PCA was negligent

---

[3]The trial court signalled that, in its opinion, PCA may have "crossed the line" between lender and operating partner. At the hearing on the Vodaks' motion to release part of the milk checks from PCA's security interest to permit them to buy seed and fertilizer the trial court stated:

> PCA. . .when they loan, seem to have a sort of a three or four pronged approach. They would make a loan much like a bank would make a loan. . .but then they would impose through the device of the security agreements almost a receivership or trusteeship over the operating capital of the farmer and the operating decisions. . ..
>
> Now, there is nothing wrong with this, and I think it was probably guided by experience and by the fact that some people who were excellent farmers were not particularly good at figures or at making business decisions. But when PCA. . .undertook to do this, they also crossed the line, I think, and made themselves liable for more than the old-time banker would have been liable for because when they started to take part in the decisions and also started to render accounting services, etc. I think they made themselves at least argua-

in performing the additional responsibilities which it assumed is for the factfinder to determine.

The factfinder could also infer that the farm plan was a representation to the Vodaks that if it was followed, they would have a successful operation. The factfinder could find that the plan was flawed in that its objectives could not be accomplished.

We conclude that there are competing inferences which raise disputed issues of material fact for trial.

## B.

### Second Counterclaim

1. *Failure to State a Claim.* PCA argues that the Vodaks' claim that it violated its fiduciary duty fails, because under *Croft,* there can be no fiduciary relationship between a PCA and a member-customer. That was not our holding in *Croft. Croft* simply held that a fiduciary relationship did not arise under the facts of that case. *See* 143 Wis. 2d at 756, 423 N.W.2d at 548.

We conclude, however, that the Vodaks' second counterclaim states a claim for negligence but not for violation of PCA's fiduciary duty to the Vodaks. If a fiduciary relationship arose between PCA and the Vodaks, all that relationship triggered was a duty on the part of PCA to disclose. *See* Restatement (Second) of

bly liable for malpractice in this particular endeavor that they took over. . ..

The transcript of the hearing is in the record and the appendix to the Vodaks' brief. In its reply brief, PCA relies on the trial court's oral findings made at the hearing. The trial court's oral decision is therefore before us by tacit agreement of the parties. We do not, however, construe the trial court's remarks as a finding on the issue of the extent of PCA's involvement in carrying out the farm plan.

Torts, sec. 551 (1977). The Vodaks do not allege that PCA failed to disclose facts which they would reasonably have expected PCA to disclose. The Vodaks' claim against PCA is founded in negligence, not nondisclosure.

2. *Summary Judgment.* For the reasons stated in Part VI.A.2., we conclude that there are competing inferences as to PCA's negligence which cannot be drawn on summary judgment.

*By the Court.*—Judgment affirmed in part and reversed in part.