Robert H. WINKEL and Kathleen A. Winkel, d/b/a Winkel Fur Farms, Plaintiffs-Appellants,

v.

## PRODUCTION CREDIT ASSOCIATION OF EAST CENTRAL WISCONSIN, Defendant-Respondent.

Court of Appeals

*No. 88-2096. Argued October 25, 1989.—Decided December 6, 1989.*

(Also reported in 451 N.W.2d 440.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *James M. Corum* of Minneapolis and *Richard P. Mozinski* of *Radosevich, Mozinski, Mozinski & Cashman* of Manitowoc and there was oral argument by *Richard P. Mozinski.*

On behalf of the defendant-respondent, the cause was submitted on the briefs of *Donald B. Rintelman* and *Michael D. Flanagan* of *Whyte & Hirschboek* of Milwaukee and there was oral argument by *Donald B. Rintelman.*

Before Brown, P.J., Scott and Nettesheim, JJ.

BROWN, P.J. Robert and Kathleen Winkel appeal from an order dismissing their complaint, brought in January of 1988, for failure to state a claim upon which relief can be granted. On appeal, they contend that the trial court erred in holding that a common-law negligence claim cannot be founded upon an alleged violation by a production credit association (PCA) of its own internal lending policies. We agree that such policies do not create a duty owed to PCA's customers and accordingly affirm the trial court on this issue. However, we read the Winkels' complaint as successfully stating a claim for negligent misrepresentation. Because this court recently clarified the status of this cause of action in *Production Credit Ass'n v. Vodak,* 150 Wis. 2d 294, 441 N.W.2d 338 (Ct. App. 1989), decided after the Winkels' complaint was dismissed, we deem it appropriate to reverse, in part, the trial court's order and remand the cause to that court for further proceedings not inconsistent with this opinion.

The Winkels, doing business as Winkel Fur Farms, brought a common-law negligence action against PCA.

Their complaint alleged that PCA originally loaned them upwards of a quarter of a million dollars and later increased that loan until the Winkels' debt approached a half million dollars. The Winkels claim that PCA was negligent in making these loans because their mink business was "not workable."

In their complaint, the Winkels set forth two causes of action. The first stated that "[u]nder its own internal policies and lending standards, PCA owed Plaintiffs the duty to make them a sound and workable loan." The complaint further alleged the following:

> Contrary to its holding out of farm credit expertise, PCA gave Plaintiffs detrimental financial and farm business advice and made negligent loan decisions concerning Plaintiffs' loan in violation of the duty to Plaintiffs created by PCA's own internal lending policies. As a direct and proximate result of said negligence and misrepresentation, Plaintiffs suffered damages in excess of $450,000.00 to be proved with specialty at trial.

Their second cause of action claimed a breach of PCA's contractual duty to act in good faith and fairness by its violation of its own loan policies and standards.

PCA moved to dismiss for failure to state a claim upon which relief can be granted. The trial court granted the motion, holding that PCA's internal lending policies and procedures do not create a duty owed to its customers nor are violations of such policies actionable under Wisconsin law. It further held that PCA, "like any other lending institution, is not and cannot be a guarantor or warrantor of the loans that it makes to its customers." The Winkels appeal.

We first address the Winkels' contention that the internal credit policies and lending standards of a PCA

create a duty and standard of care, the breach of which provides the basis for a common-law negligence action. We do not agree.

This particular question is evidently one of first impression in Wisconsin, although other jurisdictions have addressed it directly. To our knowledge, no jurisdiction has recognized such a cause of action.[1] We agree with the reasoning set forth by the Court of Appeals of Minnesota in *Ebenhoh v. Production Credit Ass'n,* 426 N.W.2d 490 (Minn. Ct. App. 1988), that violation of PCA's internal lending policies does not create a cause of action.

*Ebenhoh* begins its analysis by asserting that there is "no private cause of action for violations of, or non-compliance with, the Farm Credit Act, 12 U.S.C. sec. 2001 et seq. (1984), or regulations promulgated pursuant to the Act." *Ebenhoh,* 426 N.W.2d at 492; *see also Bowling v. Block,* 602 F. Supp. 667, 670-71 (S.D. Ohio 1985), *aff'd,* 785 F.2d 556 (6th Cir.), *cert. denied sub nom., Bower v. Lyng,* 479 U.S. 829 (1986). It further explains that, pursuant to the statutory scheme, PCA's are subject to control by the federal intermediate credit banks

---

[1]The Winkels rely on *Overvaag v. Production Credit Ass'n,* No. 87–5332 (8th Cir. Mar. 7, 1988), an unreported case. See 845 F.2d 1025, 1028 (Table of Decisions Without Published Opinions). That case does not, however, directly support their contention. There, the Eighth Circuit affirmed a district court grant of summary judgment for PCA. While the Eighth Circuit suggested that a state might found a common-law negligence cause of action upon internal policies, it held that South Dakota law did not do so. "Whether a state chooses to recognize this theory of negligence, however, is a choice for it to make, and here the District Court, sitting in the state whose law is being applied, has decided that there is no such right of action." *Overvaag,* slip op. at 2.

(FICB). *See Ebenhoh,* 426 N.W.2d at 493, and authorities cited therein.

*Ebenhoh* concludes that:

> PCA's lending policies are not readily severable from credit and lending policies of the Farm Credit Agency and FICB. While there is, as appellants point out, a difference between forbearance policies promulgated by the Farm Credit Agency and the internal lending policies of PCA, those internal lending policies are not created by PCA on its own. Rather, they are passed by PCA's board of directors, subject to approval by FICB. For this reason, we refuse to permit a private cause of action based on the internal lending policies of PCA that could not be based on the Act itself or regulations promulgated pursuant thereto. There is simply nothing that indicates PCA's internal lending policies create specific enforceable rights.

*Id.* We are persuaded by the reasoning of the *Ebenhoh* case and adopt it as our own.

The Winkels take issue with *Ebenhoh* on two bases. First, they contend that it erred in stating that PCA's internal lending policies "are passed by PCA's board of directors, subject to approval by FICB." The Winkels contend that, pursuant to 12 U.S.C. secs. 2072(17) and 2096 (1987),[2] the FICB, not PCA, construct PCA's lending policies. While the Winkels' characterization may more accurately reflect these U.S.C. provisions than does *Ebenhoh,* we are unpersuaded that the distinction they draw makes any difference concerning this issue. If anything, the Winkels' clarification demonstrates more

---

[2]Since the filing of the complaint in this matter, 12 U.S.C. secs. 2072(17) and 2096 have been amended. 101 Stat. 1630–1633 (1988), *codified as amended,* 12 U.S.C. secs. 2073 and 2075 (effective July 6, 1988).

clearly the validity of *Ebenhoh's* assertion that "PCA's lending policies are not readily severable from credit and lending policies of the Farm Credit Agency and FICB." *Ebenhoh,* 426 N.W.2d at 493.

The Winkels also take *Ebenhoh* to task for reaching its decision "without the benefit of one PCA lending standard or lending policy before it." Given the reasoning employed by the *Ebenhoh* court, we are unpersuaded by this argument.

As the Winkels themselves point out, 12 U.S.C. sec. 2072(17) (1987), a provision of the Farm Credit Act, gives each FICB the power, subject to the supervision of the Farm Credit Administration, to "make and adopt standards for lending." As we have said, there is no private cause of action for violations of regulations promulgated pursuant to the Farm Credit Act. *See Ebenhoh,* 426 N.W.2d at 492, and authorities cited therein. We know of no reason why this should be less true for policies promulgated pursuant to those regulations. Therefore, we are unpersuaded that a court must review those policies in order to determine the existence of a cause of action arising from them. Accordingly, we affirm the trial court's determination that a violation of a PCA internal lending policy cannot in itself form the basis for a common-law negligence cause of action in Wisconsin.

We do conclude, however, that the Winkels' complaint states a viable cause of action. When there has been a motion to dismiss because of the failure to state a claim for which relief can be granted, trial and appellate courts alike will liberally construe the pleading language in favor of finding that a cause of action or claim has been stated, if such conclusion is reasonably possible.

556

*Jenkins v. Sabourin,* 104 Wis. 2d 309, 313, 311 N.W.2d 600, 602 (1981). Recently, in *Vodak,* 150 Wis. 2d at 310, 441 N.W.2d at 344, this court held the following:

> The Vodaks allege that PCA represented that it possessed expertise in making and securing farm loans and in furnishing financial and farm business advice to farmers, that they were entitled to rely on PCA's representations, and that, despite its alleged expertise, PCA gave them detrimental financial and farm business advice and made "negligent" loan decisions concerning the Vodaks. The counterclaim alleges that "as a direct and prominent [sic] result of *said misrepresentations and negligent* loan decisions," the Vodaks suffered damages. (Emphasis added.) We conclude that the first counterclaim states a claim for negligent misrepresentation. [Emphasis in original.]

We conclude that the language of the Winkels' complaint, quoted earlier, makes these same allegations and therefore states a claim for negligent misrepresentation.

PCA argues that the Winkels should be deemed to have waived this claim; they did not raise it specifically in either the hearing in the trial court or the briefs before this court. Generally, issues not raised or considered in the trial court will not be considered for the first time on appeal. *Wirth v. Ehly,* 93 Wis. 2d 433, 443, 287 N.W.2d 140, 145 (1980). This rule is one of administration, however, and does not involve the court's power to address the issues raised. *Id.* at 444, 287 N.W.2d at 146. We here choose to reach the issue because the *Vodak* decision clarified the contours of the negligent misrepresentation cause of action but was unavailable at the time the trial court rendered its decision.

557

█

Because we conclude that the Winkels' complaint successfully alleges a cause of action for negligent misrepresentation, we conclude that the real controversy here has not been fully considered, if not tried. Accordingly, we exercise our discretionary reversal powers under sec. 752.35, Stats., and remand this cause to the trial court for proceedings not inconsistent with this opinion.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.