William A. PETERSON, Plaintiff,

v.

The EQUITABLE LIFE ASSURANCE
SOCIETY OF THE UNITED
STATES, Defendant.

No. 97–C–0766–C.

United States District Court,
W.D. Wisconsin.

April 6, 1999.

Thomas W. St. John, Friebert, Finerty & St. John S.C., Milwaukee, WI, for Peterson, William A., plaintiff.

Paul E. Benson, Matthew MacLean, Michael, Best & Friedrich, Milwaukee, WI, for Equitable Life Assurance Society, defendant.

## OPINION AND ORDER

CRABB, District Judge.

This civil action for disability benefits is before the court on the motions of both parties for partial summary judgment. Defendant Equitable Life Assurance Society is seeking to be relieved of liability for a depression-based disability claim filed by its former agent, plaintiff William A. Peterson, under an individual disability insurance policy. In addition, defendant seeks a judicial determination that plaintiff's group disability and health policies are part of an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001–1461, and a determination that

plaintiff's state law claims for breach of contract, injunctive relief and breach of the duty of good faith are preempted by ERISA. Plaintiff is seeking summary judgment on defendant's counterclaims and certain affirmative defenses. Diversity jurisdiction is present. 28 U.S.C. § 1332. Plaintiff and defendant are citizens of different states and more than $75,000 is in controversy.

The case arises out of differences of opinion between the parties as to plaintiff's entitlement to disability insurance benefits under group and individual disability policies obtained by plaintiff while he was an agent for defendant. Plaintiff is suing for breach of contract, contending that defendant breached the terms of the individual disability policy, the group disability policy and a group health policy. In addition, plaintiff is alleging bad faith termination of his disability benefits and, in the event defendant prevails on its position that the group policies are governed by ERISA, violations of various provisions of ERISA. He wants declaratory relief establishing that he has the right to continue to receive total disability benefits and the right not to undergo repeated examinations and analyses of his physical and mental health; injunctive relief ordering defendant both to reinstate the total disability benefits to which he believes he is entitled under the policies and to refrain from ordering him to undergo additional medical examinations; and compensatory damages, punitive damages, reasonable costs and attorney fees.

In response, defendant has asserted a number of affirmative defenses, only a few of which are relevant to the pending motions: that plaintiff's claims are barred by the terms of the policies under which he is suing; that plaintiff made material misrepresentations on his applications for insurance so that defendant is entitled to deny or reduce his claims under those policies; and that plaintiff's claim is barred under the doctrines of estoppel, waiver and laches. In addition, defendant has counter-claimed for breach of contract on the ground that plaintiff breached both the letter and spirit of his agency contract with defendant by knowingly and intentionally withholding pertinent information about his prior medical history when he applied for the policies in question; for breach of fiduciary duty arising out of plaintiff's duty to defendant to represent the company in an honest manner and protect it from intentional falsehoods; for intentional misrepresentations in his application for disability insurance; for strict responsibility misrepresentation; and for negligent misrepresentation.

I conclude that the language of plaintiff's individual disability insurance policy bars defendant from contesting its liability for plaintiff's depression-based claim of disability unless it can show that plaintiff was diagnosed or treated for depression during the two years preceding the effective date of the policy; alternatively, that the provisions governing incontestability in Wis.Stat. § 632.76 and in the policy have this effect; that plaintiff's group disability insurance policies are governed by ERISA and for that reason, his state law claims are preempted; that defendant cannot proceed on its counterclaims, because they are barred either by the applicable statutes of limitations or by the incontestability clause; and that defendant cannot assert the affirmative defenses that are the subject of this order.

At the outset, one issue requires brief mention. Plaintiff asserts that defendant is acting without justification in denying liability because the factual predicate for such a denial is "demonstrably false." According to plaintiff, he made no misstatements on his insurance application because he had never been diagnosed with "major depression" until June 1992, when he met with Dr. Goldbloom, a psychiatrist to whom he had been referred for diagnosis and treatment by his regular treating physician.

If plaintiff is arguing that he had never been diagnosed as having a *major* depres-

sion, he might have some room for argument. I am perplexed, however, at his assertion that he had never been diagnosed or treated for any kind of depression. Although defendant has not proposed the substance of plaintiff's medical records as fact, it has summarized them in response to plaintiff's proposed findings. The physician notes in those records undermine plaintiff's assertion that he never knew he had depression. *See, e.g.,* note from Dr. Caplan on September 24, 1975: "Since my suspicion for depression is quite high in this patient, I have advised him to take Elavil 75 mg. daily at night"; note of same day from Dr. J.V. Beardsley, describing the results of a test taken by plaintiff and adding, "There is mild to moderate depression accompanying this response as well"; note of November 11, 1975, from Dr. Caplan: "I believe he has a depressive reaction, peptic ulcer disease; both of which are currently improved with his medications"; note of January 31, 1981, from Dr. D.D. Norenberg: "No new symptoms, discussed possible underlying depression. He concurs with continuing Desipramine and is given a new prescription for Desipramine 75 mg"; note of September 14, 1982, from Dr. Norenberg: "We discussed depression. He realizes he has a problem and he does want to see a psychiatrist."

In the face of these medical records, I cannot say that defendant's factual predicate for its motions is "demonstrably false." Plaintiff's constant reiteration of this theme undermines the force of its arguments on other issues.

For the purpose of deciding the pending motions, I make the following findings of fact.

## UNDISPUTED FACTS

Plaintiff William A. Peterson is an individual domiciled in Wisconsin. Defendant Equitable Life Assurance Society is a New York corporation with its principal place of business in New York City.

Plaintiff applied for a position with defendant in its La Crosse office in December 1986, and was hired after a series of interviews. After a lengthy training period, during which he was treated as an employee and paid a training allowance and service fees as a salary, plaintiff executed an "Agent's Contract," setting forth the terms and conditions of his agency with defendant. The agreement included a provision that nothing contained in it was to be construed as creating the relationship of employer-employee between plaintiff and defendant. In addition, it provided that plaintiff might participate in defendant's benefit program to the extent to which he was qualified. After plaintiff finished his training, he received no salary or wage or any vacation time. All of his income from defendant came in the form of commissions on insurance policies he sold.

Sometime before plaintiff started his training, he received a copy of defendant's "Agent's Benefits" book, which contained a summary plan description of the company's benefits. Plaintiff chose to participate in defendant's group life insurance plan, dependent life insurance plan and the group health and disability insurance plans at issue in this case. Defendant chose the specific products to be offered in the benefit program, the insurers for the products, the level of benefits, the applicable deductibles, if any, and any waiting periods. Individual agents and employees had no involvement in determining any of the elements of the program. Participation in the program was voluntary. An agent's eligibility for benefits was determined by his or her level of productivity.

Under the group life insurance plan that defendant makes available, defendant pays the first $50,000 of coverage. The employee pays the premiums for any amounts above $50,000. Defendant offers employees and agents a cafeteria plan for group health insurance, for which it pays the majority of the premium cost. The insurance is self-funded by defendant, using a

501(C)(9) trust. Defendant pays all of the costs of retirement benefits. Defendant performed all the administrative tasks for the individuals who participated in its employee benefit program and arranged for premium payment by payroll deduction.

On or about January 20, 1988, plaintiff applied for an individual policy of long-term disability insurance with defendant. He filled out the "Agent's Report" section of the application as well. In response to Question 4(b) on the application, plaintiff answered "no" to the question, "Have you ever been treated for or had any known indication of: ... [b] ... nervous system disorder; emotional, psychological or mental disease or disorder?"

In reliance on the representations plaintiff made in his application, defendant issued him a policy of disability insurance, effective January 20, 1988. The policy provides for payment of monthly income for a disability caused by sickness or injury that precludes engaging in the substantial and material duties of the insured's regular occupation.[1] In the Definitions section, defendant defines sickness as "your sickness or disease which is first diagnosed or treated while this policy is in force." In another section, it excludes coverage for any loss caused by or contributed to by a pre-existing condition:

> This policy does not cover any loss which is caused or contributed to by a pre-existing condition. This is subject to the second paragraph of Incontestability on page 8. A pre-existing condition is an injury that occurred or a sickness that was diagnosed or treated within the two years before the effective date of this policy.

The policy includes an incontestability clause that provides as follows:

> After this policy has been in force during your lifetime for two years from its Effective Date we cannot contest it for misstatements in the application. We cannot contest any policy change that requires evidence of insurability, or any reinstatement of this policy, after the change or reinstatement has been in effect for two years during your lifetime. The two years will not include any period during which you are totally, partially, or residually disabled.
>
> No claim for loss incurred or disability that starts after two years from the Effective Date will be reduced or denied on the grounds that a sickness or physical condition existed prior to the effective date. This will not apply if such sickness or condition was excluded from coverage by name or specific description on the date of loss.

On or about June 29, 1992, plaintiff made a claim for disability under the policy, alleging that he had become totally disabled from his occupation as an insurance agent. An accompanying medical report showed that plaintiff was suffering a major depression. Defendant began investigation of the claim and discovered that plaintiff had received treatment for depression before he applied for disability insurance. As of October 30, 1992, defendant elected to develop plaintiff's claim history further before deciding whether he was eligible to receive benefits.

On December 11, 1992, Leonard Harris called plaintiff on behalf of defendant and advised him of defendant's concerns about what it saw as a pre-existing condition. Harris told plaintiff that the important thing was to get him back to work and worry about coverage later. He told plaintiff that defendant would pay plaintiff

1. Reading the policy is complicated by two facts. First, the parties submitted different versions of the policy. The one attached to plaintiff's second amended complaint has a revised issue date of 1992; the one attached to the affidavit of Matthew S. MacLean has a revised issue date of 1998. Second, neither party submitted a complete copy of the policy. Fortunately, the pages missing from plaintiff's copy are not the same as those missing from defendant's copy, allowing me to piece together a whole copy. I have made the assumption that the relevant policy provisions did not change with the revisions.

without prejudice. Plaintiff has no recollection of this conversation.

On December 14, 1992, Harris wrote to one of the claims personnel involved in plaintiff's claim, saying that he had spoken to plaintiff on December 11 and had told plaintiff that payments made to plaintiff were being made without prejudice. Harris wrote plaintiff a follow-up letter that included the following paragraph:

By now, you have received our check representing adjustment of claim to the onset date of August 1, 1991. This payment was made as an exception to the policy terms. As you know, there were issues of "regular care and attendance of a physician" in addition to a history which pre-dated the policy's effective date. Nevertheless, these issues were resolved in your favor.

During the time that defendant paid total disability benefits to plaintiff, it did so with checks stamped with the notation "Payment Without Prejudice to Equitable's Rights." On January 28, 1997, defendant denied plaintiff's claim on the stated ground that he was no longer totally disabled from performing his occupation as an insurance agent because of depression.

After plaintiff filed this lawsuit, a physician conducting an independent medical examination of plaintiff diagnosed him as suffering from fibromyalgia. Defendant resumed paying total disability benefits under the policy, effective July 1, 1998. The payment of those benefits continues to the present. Until January 28, 1997, plaintiff had never listed any reason for his claimed disability other than depression.

## OPINION

### A. *Defendant's Motion for Summary Judgment on the Individual Policy*

Whatever plaintiff's medical history reveals about any prior treatment or diagnosis of depression, it is irrelevant if, as plaintiff contends, defendant is barred by the language of its policy or the operation of the incontestability clause from contesting the truthfulness of the statements in plaintiff's disability insurance application. If defendant is not so barred, a jury will have to decide whether plaintiff made misstatements when he answered "no" to the question about prior emotional, mental or psychological diseases or disorders. For the sole purpose of deciding the pending motions, I will assume that plaintiff's depression was diagnosed and treated well before he applied for disability insurance and that his omission of this information from the application was intentional.

The individual policy defendant issued to plaintiff provides coverage only for sickness first diagnosed or treated while the policy is in effect. The parties have concentrated on the question whether the presence of an incontestability clause in the insurance contract prevents an insurer from denying benefits to an insured who claims disability benefits for a disease diagnosed and treated before the insured applied for the insurance if the insurance policy has been in force for two years.

■ My reading of the contract persuades me that, in determining whether defendant can resist payment, the incontestability clause may not be as important as the definitions of sickness and preexisting condition defendant chose for its policy. The individual policy issued to plaintiff defines sickness as "your sickness or disease which is first diagnosed or treated while this policy is in force." The policy then explains that it does not cover any loss caused or contributed to by a preexisting condition, which is defined as being "*an injury that occurred or a sickness that was diagnosed or treated within the two years before the effective date of this policy.*" (Emphasis added.) In a separate section, the policy provides that it "does not cover any loss which is caused or contributed to by any of the following: (1) a pre-existing condition, as defined above."

Reading these provisions together is instructive. Defendant says in its policy

that it provides coverage for sicknesses *first* diagnosed or treated after the policy is in effect and that it does *not* cover sicknesses caused by a preexisting condition; rather, it excludes such sicknesses from coverage. So far, so good. The provisions are in sync. However, the policy then defines "preexisting condition" as "a sickness that was diagnosed or treated within the two years before the effective date of this policy." In other words, the applicant is told first that the policy coverage is only for disability caused by sicknesses diagnosed or treated after the effective date of the policy and then told, in effect, that coverage extends to every disability except those caused by sicknesses diagnosed or treated *within the two years before the effective date.* The obvious way to read this provision is that it provides coverage for someone like plaintiff, who was last treated for depression six years before he applied for insurance but, so far as the undisputed facts show, not within the two years immediately preceding the date on which his policy took effect. At the least, the discrepancy between the provisions creates ambiguity. Applying the standard rule that any ambiguity in an insurance contract is construed against the drafter, *see, e.g., Luckett v. Cowser,* 39 Wis.2d 224, 231, 159 N.W.2d 94, 98 (1968); *Inter-Insurance Exchange of Chicago Motor Club v. Westchester,* 25 Wis.2d 100, 104, 130 N.W.2d 185, 188 (1964), I conclude that these provisions bar defendant from denying coverage for plaintiff's claim of depression-caused disability unless defendant can establish that the causal condition was diagnosed or treated within the two-year period preceding the effective date of the policy.

Alternatively, I am persuaded that the incontestability clause in the policy bars defendant from contesting its liability to plaintiff. Like most states, Wisconsin has laws governing the contestability of the validity of insurance policies. Wis.Stat. § 632.46 provides in pertinent part:

**(1) Incontestability of individual policies.** Except under sub. (3) or (4) or for nonpayment of premiums, no individual life insurance policy may be contested after it has been in force from the date of issue for 2 years during the lifetime of the person whose life is at risk.

[ **(2) Incontestability of group policies.**]

[ **(3) Misstated age or sex.**]

**(4) Disability coverages and additional accident benefits.** Despite subs. (1) and (2), disability coverages and additional accident benefits may be contested at any time on the ground of fraudulent misrepresentation.

Wis.Stat. § 632.76 provides as follows:

**(1) Avoidance for misrepresentation.** No statement made by an applicant in the application for individual disability insurance coverage ... except fraudulent misrepresentation, is a basis for avoidance of the policy or denial of a claim for loss incurred or disability commencing after the coverage has been in effect for 2 years. The policy may provide for incontestability even with respect to fraudulent misstatements.

**(2) Preexisting diseases.** (a) No claim for loss incurred or disability commencing after 2 years from the date of issue of the policy may be reduced or denied on the ground that a disease or physical condition existed prior to the effective date of coverage, unless the condition was excluded from coverage by name or specific description by a provision effective on the date of loss.

■ Incontestability clauses are in the nature of statutes of repose. *See Columbian National Life Ins. Co. v. Wallerstein,* 91 F.2d 351, 352 (7th Cir.1937) ("[T]he law recognizes that there should be a limitation of time in which an action may be brought or a defense set up.") They provide a guarantee to insured persons that, after a stated period of time, their insurance policies will not be rescinded because of misstatements in the application. In-

contestability clauses are legislatively mandated in almost all states to protect insureds and their beneficiaries from insurers who would invalidate a policy of the basis of a misstatement made years earlier. *See Wischmeyer v. Paul Revere Life Ins. Co.*, 725 F.Supp. 995, 1000 (S.D.Ind. 1989); *see also 7 Williston on Contracts* § 912.394 (3d ed.1963) (incontestability clauses are legacy of "early greed and ruthlessness of the insurers" who "too often . . . resisted liability stubbornly on the basis of some misstatement made by the insured at the time of applying for the policy"); J. Appleman, 1A *Insurance Law and Practice* § 311 at 305–6 (1981):

> [I]t is considered desirable to have a cutoff time as to ordinary misrepresentations for two reasons: first, to lighten the burden upon the courts, since litigation otherwise would be increased manyfold; second, since most contests would arise after the insured's death, a beneficiary is in a deplorable condition to wage battle with a large insurer over statements which may have been made years earlier. For these reasons, it is better to countenance the occasional risk of fraud in order to bring an end to controversy.

■ Although plaintiff argues that the incontestability clause bars the insurer from contesting coverage for any pre-existing sickness, whether treated or diagnosed before the insurance issued, he concedes there is an exception: defendant may contest coverage if it can prove that plaintiff had been diagnosed with such a condition or treated for it within the two years before January 20, 1988, the effective date of the individual policy. Defendant denies that it is barred from contesting liability for plaintiff's depression-caused disability even if it cannot prove plaintiff was treated for the condition during the two years preceding the issuance of the policy. It reads the entire issue as one of coverage: plaintiff bought coverage for only those disabilities caused by injuries incurred or sicknesses that were diagnosed or treated for the first time while the policy was in effect; the incontestability clause relates to the validity of the policy and does not operate to expand the scope of the coverage that plaintiff purchased. In other words, the clause bars defendant from denying the validity of the policy once two years have passed but allows it to deny plaintiff's claim for depression-caused disability because the policy plaintiff bought never provided any coverage for a disability diagnosed and treated years before plaintiff purchased his insurance policy.

The Supreme Court of Wisconsin has never addressed the question whether an incontestability clause in a policy bars an insurer from denying benefits for a disability caused by a disease known to the insured before the effective date of the policy. In such a circumstance, a federal court must try to predict what the state highest court would do if the question came to it. *See Boland v. Engle*, 113 F.3d 706, 710 (7th Cir.1997). Defendant argues that the safest course is to assume that Wisconsin would follow the "majority" view. The flaw in this argument is that there is no clear-cut "majority" view. In fact, there is a wide split among the state and federal courts that have addressed the issue. On one side are the courts that view the incontestability clause as defendant does: as barring an insurer from seeking to rescind an entire policy because of misstatements made in the application but leaving the insurer free to contest liability for a claimed disability that is not covered by the policy. In *The Paul Revere Life Ins. Co. v. Haas*, 137 N.J. 190, 644 A.2d 1098 (1994), for example, the Supreme Court of New Jersey held that the incontestability clause did not expand the coverage provided by the policy and that the clause did not prevent the insurer from defending against a claim based on a disease that the insured concealed knowingly when applying for insurance.

The policy issued to Haas promised coverage for "sickness or disease which first manifests itself after the Date of issue and

while Your Policy is in effect." Haas concealed the fact that he suffered from retinitis pigmentosa when he applied for insurance, although he was well aware of the condition and had received treatment for it. He argued that the insurer was prohibited ·by the incontestability clause from denying his claim of disability on the ground that the underlying disease had existed before the policy became effective unless the insurer had excluded the disease or physical condition causing the disability "by name or specific description." The state supreme court rejected Haas's argument, finding that defendant's definition of sickness was sufficient to operate as an "exclu[sion] by specific description." *Id.* at 203, 644 A.2d at 1105. The New Jersey court rejected another argument of Haas's because it did not agree that the ordinary insured would be unable to understand the difference between the insurer's promise not to challenge a claimed disability as a *preexisting* condition and its undertaking to cover only those sicknesses or conditions that first *manifested* themselves after the policy issued. *See also Button v. Connecticut General Life Ins. Co.*, 847 F.2d 584 (9th Cir.1988) (interpreting Arizona law and holding that incontestability clause prohibits insurer from arguing that policy was invalid at inception but does not bar insurere from reducing claim of insured whose disability was caused by disease that manifested itself before issurance of disability policy where policy covered only diseases that first manifested themselves after the policy went into effect). *Keaten v. Paul Revere Life Ins.*, 648 F.2d 299 (5th Cir.1981) (predicting that Georgia courts would read incontestability clause barring insured from denying liability because of preexisting disease or condition as not expanding coverage to pre-manifesting diseases when policy's coverage extended only to disability caused by disease that first manifested itself after policy was in effect); *Massachusetts Casualty Ins. Co. v. Forman*, 516 F.2d 425 (5th Cir.1975) (predicting that Florida courts would not use incontestability clause to expand coverage and pointing out irrelevance of statutorily-mandated incontestability clause in policy that covered any disease no matter when it existed provided only that it did not manifest itself before insurance took effect; with such a policy, no need for provision in incontestability clause preventing insurer from defending against claim of disability on ground that underlying disease preexisted policy); *Metropolitan Life Ins. Co. v. Conway*, 252 N.Y. 449, 452, 169 N.E. 642 (1930) (Cardozo, J.) ("The provision that a policy shall be incontestable after it has been in force . . . for a period of two years is not a mandate as to coverage. . . . It means only this, that within the limits of the coverage the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken.")

A number of courts take the opposite position. Among them are the Courts of Appeals for the Sixth and Seventh Circuits, the district courts for the District of Delaware, the Southern and Northern Districts of Indiana and the Southern District of New York; and the states of Hawaii and New York. *See, e.g., Equitable Life Assurance Soc. of United States v. Poe*, 143 F.3d 1013 (6th Cir.1998) (Michigan law); *Equitable Life Assurance Society v. Bell*, 27 F.3d 1274 (7th Cir.1994) (Indiana law); *Oglesby v. Penn Mutual Life Ins. Co.*, 889 F.Supp. 770 (D.Del.1995), *aff'd*, 127 F.3d 1096 (3d Cir.1997); *Equitable Life Assurance Society v. Bell*, 818 F.Supp. 245 (N.D.Ind.1993); *Wischmeyer*, 725 F.Supp. 995; *Fischer v. Massachusetts Casualty Ins. Co.*, 458 F.Supp. 939 (S.D.N.Y.1978); *New England Mutual Life Ins. Co. v. Doe*, 93 N.Y.2d 122, 688 N.Y.S.2d 459, 710 N.E.2d 1060, 1999 WL 171451 (1999); *Estate of Doe v. Paul Revere Ins. Group*, 86 Hawai'i 262, 277, 948 P.2d 1103, 1118 (1997). *See also Mutual Life Ins. Co. of New York v. Insurance Commissioner for the State of Maryland*, 352 Md. 561, 723 A.2d 891 (App.1999); *Blue Cross & Blue Shield of Georgia, Inc.*

*v. Sheehan,* 215 Ga.App. 228, 450 S.E.2d 228 (1994).

In *Bell,* the Court of Appeals for the Seventh Circuit noted that under Indiana law, insurers were required to use one of two specific clauses in their policies. The Equitable chose the one that provided for incontestability after two years as to any statements contained in the application and chose not to use the alternative provision that might have allowed it to deny a disability claim on the ground that the insured had made fraudulent misstatements in his application. I say "might have allowed" because Indiana law requires insurers to include a second provision that, once the incontestability period has passed, they will not reduce or deny any claim on the ground that a disease or physical condition existed before the policy became effective, unless they have excluded the disease or condition from coverage "by name or specific description".[2]

The court of appeals held that The Equitable's choice of a clause that made policies incontestable after two years for any statements contained in the application barred the company from contesting liability for disabilities caused by diseases or conditions that manifested themselves before the policy went into effect. In reaching this decision, the court reasoned as follows. It acknowledged that the Equitable policy provided coverage for only those disabilities caused by diseases or conditions that manifested themselves after the policy went into effect and that the policy specified in the "exceptions" section that it did not cover illnesses and conditions that manifested themselves before the effective date of the policy. Without an incontestability clause, the court conceded, The Equitable would have prevailed on its claim that it never provided Bell with coverage for his multiple sclerosis-caused disability and therefore owed him no benefits under the policy. The court noted, however, that the policy's clear statement of coverage was complicated by the mandated inclusion of the incontestability clause, which barred The Equitable from denying a claim on the ground that the underlying sickness or injury existed before the policy issued. The court was not persuaded that an ordinary insured would understand the distinction between the word "preexisting" used in the incontestability clause and the word "pre-manifesting" used in the definition of covered diseases. *See Bell,* 27 F.3d at 1281–82 ("term 'exist' in its ordinary sense refers broadly to a state of being, without reservation as to other qualities, including manifestation.... [I]n the absence of any clarification in the clause, we believe it is most naturally understood to include any pre-existing disease or condition, regardless of whether it manifested prior to the policy date"). The court stated its explicit disagreement with those courts that read the incontestability clause as leaving the insurer free to exclude from coverage pre-manifesting diseases and conditions. *Id.* at 1280–81. That might be a fair reading of the first provision of the incontestability clause (*see* n. 2, *supra* ), which "disposes only of defenses based on purported misrepresentations in the policy application, and otherwise leaves the insurer free to establish the parameters of coverage as it desires," *id.* at 1281, but it does not take into consideration the language of the second provision (*see* n. 2, *supra* ), which prohibits insurers from reducing or denying

**2.** Bell's policy contained the following incontestability clause:

(a) After this policy has been in force for a period of two years of the lifetime of the Insured (excluding any period during which the Insured is disabled), it shall become incontestable as to the statements contained in the application.

(b) No claim for loss incurred or total disability (as defined in the policy) commenc-

ing after two years from the Date of Issue of this policy shall be reduced or denied on the ground that a disease or physical condition had existed prior to the effective date of coverage under this policy, unless, effective on the date of the loss, such disease or physical condition was excluded from coverage by name or specific description.

any claim on the ground that the disease or condition existed before the policy took effect. *Id.* "This provision states in no uncertain terms that after two years, no disability claim shall be denied on the ground that the underlying disease or condition 'existed' before the policy became effective." *Id.* The court agreed with the district court that reading "manifesting" and "existing" as distinct would nullify the legislature's protective purposes in mandating the cause to protect policyholders.

The court of appeals noted that in Indiana, an insurer may preserve its right to deny liability for a preexisting condition or disease that it excludes from coverage by name or specific description, but it rejected the idea that a generic exclusion of "preexisting diseases or conditions" was the equivalent of a specific description, as The Equitable had argued. *See Bell,* 27 F.3d at 1279–80 (" '[T]he most reasonable interpretation of these words is that a specific pre-existing condition, i.e., something such as tuberculosis or diabetes, may be specifically excluded from coverage by agreement of the parties if that condition is named or specifically described in the policy.' ") (quoting *Wischmeyer,* 725 F.Supp. at 1004–05). *See also Oglesby,* 889 F.Supp. at 776–77 (rejecting conclusion in *Haas* that policy's exclusion of all pre-manifesting diseases from definition of "sickness" was tantamount to "exclusion by specific description" and collecting cases supporting its contrary view); *Fischer,* 458 F.Supp. at 944; *Penn Mutual Life Ins. Co. v. Oglesby,* 695 A.2d 1146, 1151 (Del.1997) (answering questions of law certified by the Court of Appeals for the Third Circuit); *Estate of Doe,* 86 Hawai'i at 277, 948 P.2d at 1118 (adopting reasoning of *Bell* and *Wischmeyer* ). *See generally,* Dale Joseph Gilsinger, *Construction of incontestable clause applicable to disability insurance,* 67 A.L.R.5th 513 (1999).

■ Unlike Indiana, Wisconsin does not require insurers to insert the incontestability provisions of § 632.76 in their policies but the statute governs the responsibilities of the parties to the insurance contract. Defendant included the provisions in its policy. The policy at issue in *Bell* spoke of covered diseases as those that "first manifest" themselves after the policy goes into effect. The policy at issue here defines covered diseases and injuries as those that were "first diagnosed or treated" after the policy went into effect. The question is whether the Wisconsin supreme court would find that the legislature intended that such a distinction in terminology relieved defendant of the prohibition against denying a claim on the ground that the underlying disease or injury existed before the policy issued. I am persuaded that it would not. The language of Wis.Stat. § 632.76(2)(a) bars an insurer from denying a claim for disability "on the ground that a disease or physical condition existed prior to the effective date of coverage, unless the condition was excluded from coverage by name or specific description . . . ." I believe that the state supreme court would agree with the Court of Appeals for the Seventh Circuit that a generic exclusion of all diseases or conditions diagnosed or treated before issuance of the policy does not constitute exclusion by name or specific description and that it would hold that the statute applies to any attempt to deny a claim for disability on the ground of a preexisting disease or condition. In addition, I predict that, when the issue of misrepresentation involves a preexisting disease, the court would find that the provisions of subsection (2) of § 632.76 override those of subsection (1) to the extent that subsection (1) allows an insurer to deny a claim for loss on the basis of fraudulent misrepresentations.

I reach this last conclusion after reviewing the different language the legislature used in the two subsections. If the legislature had intended that subsection (2) would not apply when the insurer could show that a fraudulent misrepresentation had been made about the insured's health in the application, it would have made such

an exception explicit, as it did in subsection (1). The absence of any reference to fraudulent misrepresentations in subsection (2) is strong evidence that the legislature did not intend to allow insurers to deny liability on the asserted ground of a preexisting disease or condition, even if the disease or condition were the subject of a fraudulent misrepresentation. *See Poe,* 143 F.3d at 1019 (expressing doubt that Michigan legislature "forgot" to include language in second part of incontestability provisions excepting fraud from protection when it did so specifically in first part).

As numerous courts and commentators have noted, it is not an easy thing to read an insurance contract in a way that benefits a person who has omitted pertinent information from his application for insurance or made false statements to the company. However, the Wisconsin legislature has made the policy decisions that guide the interpretation of insurance contracts. For now, the legislature has decided that the advantages of repose, with its protection of insureds and its limitation of litigation, outweigh the threat to the insurance industry of fraudulent applications or the imposition on the insurance-buying public of more intrusive investigations into medical histories.

Given the conclusion that defendant is barred from contesting its liability for plaintiff's claim of depression-caused disability unless it can show that plaintiff was diagnosed or treated for the underlying disease during the two years immediately preceding the issuance of the policy, it is unnecessary to decide whether, as plaintiff asserts, defendant is barred from contesting coverage because of laches, waiver or the running of the statute of limitations.

### B. *Defendant's Motion for Partial Summary Judgment on the Group Disability Policy*

As with the issue of defendant's liability for plaintiff's depression-caused disability, the parties' positions on the nature of the health and disability group policies are diametrically opposed. Plaintiff believes that he is an independent contractor, not an employee of defendant, and that because he is an independent contractor, he cannot be a "participant" in the group policies as that term is defined in 29 U.S.C. § 1002(7). Therefore, he maintains, his claims under the group policy are not preempted by ERISA. He argues also that the principle of issue preclusion bars this court from making an independent examination of his status as an employee because that issue has been decided against defendant by a district court in Southern Florida in a case brought by an agent situated similarly to plaintiff. *See Sica v. The Equitable Life Ins. Soc'y of United States,* 756 F.Supp. 539 (S.D.Fla. 1990). Defendant denies that plaintiff is an independent contractor for ERISA purposes, denies that issue preclusion bars an independent inquiry into the facts as they relate specifically to plaintiff and argues that even if plaintiff is right on these two matters, ERISA preemption still applies because the suit is one that "relates" to ERISA, *see Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), and because plaintiff is a "beneficiary" of defendant's benefits plan within the meaning of 29 U.S.C. § 1002(8).

█ It is not necessary to resolve the question of plaintiff's status as an independent contractor or employee or the more fundamental question of issue preclusion. Whether or not plaintiff is an independent contractor rather than an employee and for that reason cannot qualify as a participant, he is subject to the provisions of ERISA as a beneficiary of the program and of the group insurance policies in particular. (In *Sica,* the court did not consider whether the plaintiff might be a beneficiary of the policy under which he was seeking benefits; if issue preclusion applies to the court's determination of Sica's status as an independent contractor, it does not apply to an issue the district court did not reach. *See Michelle T. v. Crozier,* 173 Wis.2d 681, 687, 495 N.W.2d

327, 330 (1993); *Hlavinka v. Blunt, Ellis & Loewi, Inc.*, 174 Wis.2d 381, 396–97, 497 N.W.2d 756, 762 (Ct.App.1993) (discussing collateral estoppel as applied to new case between same parties)).

Plaintiff does not deny that defendant's group policy is a "plan, fund or program" of employee benefits "established and maintained" by defendant, as an employer, for the purpose of providing ERISA-covered benefits. He concedes that if he is deemed a participant or a beneficiary, his common law claims regarding the group policy would be preempted and ERISA would provide his sole remedies.

A "participant" under ERISA is any employee or former employee "who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer ... or whose beneficiaries may be eligible to receive any such benefit." § 1002(7). Unless I were to ignore the holding in *Sica*, 756 F.Supp. 539, it would be difficult to find that plaintiff is a participant under this section in light of the language restricting the term participants to "employees or former employees." However, no such impediment precludes a finding that plaintiff is a "beneficiary," which § 1002(8) defines as "a person designated by a participant or *by the terms of an employee benefit plan*, who is or may become entitled to a benefit thereunder." (Emphasis added.)

It seems self-evident that plaintiff qualifies as a beneficiary. After all, he brought this suit to recover *benefits* he contends are owing to him. He has been receiving benefits under defendant's benefit plan since 1992. Moreover, it would be inimical to the purposes of ERISA to allow agents such as plaintiff to participate in ERISA-qualified employee benefit programs if they are not subject to ERISA's rules and restrictions when they sue for benefits. Allowing such persons to take their employee benefit disputes to state court could lead to hundreds of different state court rulings, in derogation of the purposes for which ERISA was enacted. *See Pilot Life*, 481 U.S. at 46, 107 S.Ct. 1549: " '[T]he substantive and enforcement provisions of [ERISA] are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans.' " (Quoting remarks of Sen. Williams, 120 Cong.Rec. 29197 (1974)). Agents could sue for and obtain expansive damages for state tort law claims that might drain the benefit plan, reduce the benefits available or require increases in premiums for others subscribing to the plan.

■ Plaintiff argues that reading the statute to find him a beneficiary must be wrong. Reading "beneficiary" to include *anyone named as a beneficiary* would be a way of defeating the anti-inurement provisions of ERISA that prohibit employers or owners from benefiting from an employee benefit plan. Although plaintiff is not an employer or owner, he relies on cases discussing such persons in support of his argument that only employees can be participants or beneficiaries with standing to sue under ERISA.

As plaintiff points out, a number of courts have held that owners or employers may not sue under ERISA for benefits under employee benefit plans or insurance policies. *See, e.g., Giardono v. Jones*, 867 F.2d 409, 411–12 (7th Cir.1989) (union sued employer who had agreed to adopt area master contract under which he and his employees received health insurance coverage, but failed to keep agreement to hire union employees; court held that employer lacked standing to bring counterclaim under ERISA because of his status as employer) (citing *Chase v. Trustees of Western Conference of Teamsters Pension Trust Fund*, 753 F.2d 744, 748 (9th Cir. 1985)) and *Peckham v. Board of Trustees*,

653 F.2d 424, 427 (10th Cir.1981) (both cases dealing with pension funds rather than with disability or health benefits); *see also Matinchek v. John Alden Life Ins.*, 93 F.3d 96 (3d Cir.1996) (insurance policy covering only sole owner of business and his dependents is not ERISA plan); *Meredith v. Time Insurance Co.*, 980 F.2d 352 (5th Cir.1993) (same); *Fugarino v. Hartford Life & Accident Ins. Co.*, 969 F.2d 178 (6th Cir.1992) (sole proprietor of restaurant was neither participant nor beneficiary with respect to insurance policy purchased to provide health insurance for proprietor, his dependents and some employees and their dependents; proprietor not bound to sue in federal court under ERISA but free to bring state law claim for bad faith in state court); *Harris v. TMG Life Ins. Co.*, 915 F.Supp. 869 (S.D.Tex.1996) (self-employed dentist neither participant nor beneficiary under ERISA); *Madden v. Country Life Ins. Co.*, 835 F.Supp. 1081 (N.D.Ill.1993) (plaintiff who was partner in law firm could not sue in federal court under ERISA to recover health insurance benefits either as a participant or a beneficiary because he was owner rather than employee).

▮ Far more persuasive are the cases that recognize that health and disability insurance plans that involve group insurance policies paid for by premiums, rather than being self-funded by employers, do not raise the problems that led to the enactment of ERISA. *See, e.g., Engelhardt v. Paul Revere Life Ins. Co.*, 139 F.3d 1346, 1351 (11th Cir.1998) (no anti-inurement problem in allowing surgeon who was shareholder to sue under ERISA because benefits would be paid out of general funds of insurer, not out of pension or other funds entrusted to employer by its employees). Such insurance programs do not implicate the congressional concern that employee pension and welfare plans would not have the funds to meet employee obligations when they were needed be-

cause of inadequate funding, poor administration or raids on the funds by employers. It was to protect the beneficiaries of self-funded plans that Congress enacted the provision in 29 U.S.C. § 1103(c)(1) that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries." *See also Prudential Ins. Co. v. Doe*, 76 F.3d 206, 208 (8th Cir.1996) (managing partner of law firm had standing under ERISA to sue for health insurance benefits where he was designated to receive benefits under firm's health plan); *Peterson v. American Life & Health Ins. Co.*, 48 F.3d 404 (9th Cir.1995) (partner could sue under ERISA for health insurance benefits where plan qualified under ERISA and plaintiff was designated to receive benefits). *Harper v. American Chambers Life Ins. Co.*, 898 F.2d 1432 (9th Cir.1990) (remanding case for determination by district court whether partnership's plan qualified as ERISA plan; if it did not, plaintiff partner could not sue in federal court for benefits; if it did, he could proceed); *Spurlock v. Employers Health Ins. Co.*, 13 F.Supp.2d 884 (E.D.Wis.1998) (partner in accounting firm that had ERISA-qualified health insurance policy could sue under ERISA as beneficiary); *Eichhorn, Eichhorn & Link v. Travelers Ins. Co.*, 896 F.Supp. 812 (N.D.Ind.1995) (because firm's insurance policy covered partner, he was designated by terms of plan to receive benefits and therefore met definition of beneficiary).

The situation is different if the law does not permit the owner to take part in the plan, as the court of appeals made clear in *Harper*, 898 F.2d 1432. *Cf., e.g., Kwatcher v. Massachusetts Service Employees Pension Fund*, 879 F.2d 957, 964–67 (1st Cir. 1989) (ERISA makes no provision for return of contributions made to pension fund erroneously by persons who are employers or owners, but principles of equity may

permit federal courts to allow such returns); *Chase*, 753 F.2d 744 (allowing suit by owner-operators of taxicabs found ineligible for pension benefits to seek restitution of contributions made to pension plan); *Peckham*, 653 F.2d at 428 (leaving it to district court to decide whether appellee employers could obtain refund of contributions made to pension plan on their behalf).

In summary, I am persuaded that plaintiff is wrong in arguing that recognizing persons in his position as beneficiaries would have the effect of providing owners and employers a back door way of avoiding the anti-inurement provision of ERISA. It would not. No one is a "beneficiary" unless he or she is permitted under ERISA to take part in an employee benefit plan. Plaintiff does not suggest that it is illegal for agents to participate in defendant's plan under ERISA or any other provision. As a legitimate subscriber to the plan, he is a beneficiary within the meaning of § 1102(8).

Defendant's group disability and health insurance policies constitute an ERISA plan. Plaintiff is a beneficiary of that plan, entitled to sue in federal court for benefits due him. Under ERISA, his state law claims are preempted. Defendant's motion for partial summary judgment will be granted with respect to the group disability insurance policy.

### C. *Plaintiff's Motion for Summary Judgment on Counterclaims*

In its counterclaims, defendant contends that plaintiff breached both the letter and spirit of his agency contract with defendant by knowingly and intentionally withholding pertinent information about his prior medical history when he filled out his application for the policy in question; that plaintiff breached a fiduciary duty owed defendant; and that his representations on his individual policy application give rise to claims of intentional misrepresentation, strict responsibility for misrepresentation and negligent misrepresentation. In addition, defendant raises a number of affirmative defenses, only three of which are the subject of plaintiff's motion: 1) Plaintiff's claims under the individual disability policy, group disability policy and group health plan are barred by the terms of those policies; 2) plaintiff's claims under these plans are barred or reduced by his material misrepresentations on his applications; and 3) plaintiff's claims are barred under the doctrines of estoppel, waiver and laches. The counterclaims and affirmative defenses are based upon the same assertion: that plaintiff failed to disclose that he had been diagnosed as having depression and treated for that condition before he made out his application.

Defendant's first counterclaim rests on its allegation that plaintiff breached his agency contract with defendant when he omitted pertinent information from his insurance application. As plaintiff points out, however, nothing in the contract of employment that the parties signed placed any requirement on plaintiff to fill out applications for disability insurance thoroughly and accurately. Nevertheless, defendant maintains that plaintiff had such an obligation by virtue of his relationship with defendant. Citing *Faultersack v. Clintonville Sales Corp.*, 253 Wis. 432, 34 N.W.2d 682 (1948), defendant argues that, as an agent, plaintiff had a fiduciary relationship to defendant and owed it a higher standard of care, even when applying for his own disability insurance.

To the extent that defendant is asserting an independent claim and not simply arguing that plaintiff's breach of his agency contract is a reason for not paying him the benefits due under the individual disability insurance contract, the claim is barred by the running of the statute of limitations. Defendant's cause of action for breach of contract would have accrued

in 1988, when plaintiff applied for insurance. Defendant did not file its counterclaim until November 20, 1998, more than six years after the breach occurred and well outside the limitations period of the statute. *See* Wis.Stat. § 893.43 (actions under contract must be commenced within six years of accrual of action). Although many states recognize a "discovery" rule for breaches of contract just as they do for torts, Wisconsin is not one of them. In this state, a cause of action for breach of contract accrues when the breach occurs, even if the breach is unknown and unknowable to the other party to the contract. *See CLL Assoc. Ltd. Partnership v. Arrowhead Pacific Corp.*, 174 Wis.2d 604, 611–13, 497 N.W.2d 115, 117–18 (1993).

 Defendant argues that the statute of limitations does not apply to counterclaims. It cites *Heck v. Rodgers*, 457 F.2d 303, 307 (7th Cir.1972), for the proposition that pure defenses are generally not subject to a statute of limitations. However, *Heck* was decided under Illinois law, which did not have a statute subjecting defenses to the statute of limitations. Wisconsin does have such a statute. Wis.Stat. § 893.14 provides that "the period within which a cause of action may be used as a defense or counterclaim is computed from the time of the accrual of the cause of action until the time that the plaintiff commences the action in which the defense or counterclaim is made." This section bars defendant from asserting its breach of contract claim on which the statute of limitations ran in 1994.

In another effort to prove that its counterclaim is timely, defendant maintains that plaintiff breached his agency contract on two different occasions: when he filled out his application falsely and again in 1992, when he collected benefits under a policy initially issued because of the false information on the application. Until 1992, defendant argues, it had not incurred any

damages and therefore had no present right to enforce its agency contract against plaintiff. In essence, defendant's argument is simply another version of the discovery rule rejected by the Wisconsin supreme court in *CLL Assoc.*, 174 Wis.2d 604, 497 N.W.2d 115. Defendant wants to start the accrual date running from the time it discovered it had been damaged, rather than from the date of the breach, but Wisconsin law prevents it from doing so.

 Defendant makes the additional argument that its counterclaim is actually in the nature of an action for recoupment and therefore is not time barred. The only way in which the counterclaim can be treated an action for recoupment is if it is considered part of the same claim upon which plaintiff is proceeding, that is, as being in the nature of a defense to the claim. *See* 51 Am.Jur. *Limitation of Actions* § 77 (1970) (defense of recoupment arises out of same transaction as plaintiff's claim and ordinarily survives as long as cause of action upon claim continues to exist); *see also Crossett Lumber Co. v. United States*, 87 F.2d 930, 934 (8th Cir. 1937). So considered, the counterclaim would be barred by the terms of the incontestability clause.

 Defendant has pleaded breach of fiduciary duty as another counterclaim. A similar analysis applies. If defendant is relying on recoupment to avoid the statute of limitations, it is barred from doing so by the incontestability clause. If it is pleading an independent claim, it is barred by the statute of limitations. Wis.Stat. § 893.51 provides a two-year period of limitations for claims based on breach of fiduciary duty. Plaintiff's breach occurred in 1988. Defendant tries to avoid the effect of the statute by arguing that persons accused of breach of fiduciary duty may not be permitted to plead the statute of limitations as a bar. It cites *Production*

*Credit Assoc. of West Central Wisconsin v. Vodak*, 150 Wis.2d 294, 441 N.W.2d 338 (Ct.App.1989), and argues that the existence of a fiduciary relationship may estop a fiduciary from asserting the statute of limitations if the fiduciary's conduct and representations " 'were so unfair or misleading as to unbalance the public's interest in setting a limitation on bringing actions.' " *Id.* at 304–05, 441 N.W.2d at 342 (quoting *Hester v. Williams*, 117 Wis.2d 634, 645, 345 N.W.2d 426, 431 (1984)). However, *Vodak* rejected the idea that the mere existence of a fiduciary relationship might lead to such estoppel. *Hester* makes it plain that in determining whether to estop a party from asserting a statute of limitations defense, the other party must show both that the party to be estopped engaged in fraudulent or inequitable conduct *and* that the delay in bringing suit was attributable to reliance on that party's representations or acts. *Hester*, 117 Wis.2d at 644, 345 N.W.2d at 431. Defendant has made no such showing in this case.

Defendant's counterclaims for negligent misrepresentation and for strict responsibility misrepresentation are essentially defenses to the claim pursued by plaintiff and barred by the terms of the incontestability clause, as is defendant's counterclaim for fraudulent misrepresentation.

All of defendant's affirmative defenses are based on the claim that plaintiff failed to disclose his earlier treatment for depression in his application for disability insurance benefits. In the affirmative defense it labels E in its answer, defendant contends that plaintiff's claims are barred by the terms of the policy. In the first section of this opinion, I have explained why plaintiff is not barred from recovering under the terms of the insurance policy. It follows, therefore, that this affirmative defense cannot serve as a reason for allowing defendant to deny plaintiff's depression-based disability claims. In any event,

this defense would be barred by the terms of the incontestability clause.

Defendant's affirmative defense M rests on plaintiff's alleged misrepresentations. Having decided that defendant cannot rely on these misrepresentations to defeat plaintiff's claim, I will grant plaintiff summary judgment on this defense.

Finally, as to affirmative defense N, defendant has made no showing that the doctrines of laches, waiver or estoppel apply to plaintiff's claims.

## ORDER

IT IS ORDERED that the motion of defendant Equitable Life Assurance Society for partial summary judgment is GRANTED with respect to its contention that plaintiff William A. Peterson's group policies are part of an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 and that plaintiff's state law claims for breach of contract, injunctive relief and breach of the duty of good faith are preempted by ERISA; defendant's motion for partial summary judgment is DENIED with respect to its claim that it should be relieved of liability for payments for a claimed disability of depression filed by plaintiff; and plaintiff's motion for partial summary judgment on defendant's counterclaims and defendant's affirmative defenses labeled E, M and N is GRANTED.